## S97A0302. JONES v. THE STATE.
(483 SE2d 871)

THOMPSON, Justice.

A jury convicted Joshua James Jones of malice murder in the shooting death of Terrell Pickett.[1] Jones appeals from the judgment of conviction and sentence entered thereon, asserting primarily that he was unlawfully convicted on the uncorroborated testimony of an accomplice. Finding no error, we affirm.

On the morning of November 21, 1994, a white Buick Skylark sedan was stopped along a dirt road in Bibb County. A resident of the area observed a passenger push a body from the car onto the road. The passenger jumped into the car and the driver sped off. It was determined that the victim had been killed a short time earlier by a single gunshot from close range to the back of the head. The witness was able to provide the officers with the license tag number of the white car, which was found abandoned at 1:00 p.m. that afternoon in Macon. At about the same time, several items of bloody clothing, two Wachovia bank savings account withdrawal slips, and a life insurance policy issued to Frederick Hawkins, were found in a trash dumpster near the white car. Police traced the car to an Anthony Thomas who told officers that he had loaned it to Frederick Hawkins during the time in question. When Hawkins was questioned by the investigating officers, he gave a lengthy statement implicating Jones, and he led the officers to the murder weapon, which had been thrown from the car alongside Interstate 16.[2]

---

[1] The crime was committed on November 21, 1994. The indictment was returned on March 14, 1995. Trial commenced on June 19, 1995, and on June 22, 1995 Jones was found guilty of malice murder and sentenced to life imprisonment. A motion for new trial was filed on July 14, 1995, amended on May 8, 1996, and on June 20, 1996. The motion for new trial was denied on August 8, 1996. Pursuant to the grant of a motion for out-of-time appeal on October 22, 1996, a notice of appeal was filed on October 24, 1996. The case was docketed in this Court on November 14, 1996, and submitted for decision on briefs on January 6, 1997.

[2] Hawkins was charged in a separate indictment. He testified as a witness for the State at Jones' trial.

Hawkins testified at trial that he borrowed the car from Anthony Thomas, and while driving around during the evening of November 20, stopped to pick up an acquaintance, Terrell Pickett. Together the two men consumed cocaine, which Pickett had in his possession. At about midnight, Hawkins drove Pickett to Jones' apartment for the purpose of purchasing additional cocaine. Hawkins introduced Pickett to Jones and told him that Pickett did not have any money with him, but that Pickett would pay him on the following day with money he had on deposit in a bank. Based on this representation, Jones gave Pickett $100 worth of drugs. Hawkins and Pickett left together and consumed the drugs.

During the course of the night, Hawkins and Pickett made several trips to Jones' apartment for more cocaine. By 7:00 a.m., Jones had advanced Pickett $300 worth of cocaine and the men had spent the entire night consuming the drugs. The plan was that Hawkins would drive Pickett to the bank to make a withdrawal, they would then deliver the money to Jones, and Hawkins would drive Pickett to work. But Jones decided that he would accompany Hawkins and Pickett to the bank.

Hawkins drove to a Wachovia Bank at 9:00 a.m. Pickett completed a savings withdrawal slip, but because he had no identification, Hawkins provided the teller with his driver's license, which she noted on the slip. The teller was unable to access Pickett's account because he had provided an incorrect account number. Pickett asked to be driven home so that he could get the correct account number. Shortly after 9:00 a.m., the three men drove up to Pickett's house. In Jones' presence, Hawkins told Pickett's father that he had advanced his son $300. Pickett's father responded that his son did not have any money and could not repay him. Terrell Pickett went into the house and returned with a slip of paper. The three returned to Wachovia Bank. Pickett was still unable to provide sufficient information to allow him to make a withdrawal. According to the bank manager, while Pickett was complaining about his inability to withdraw the money, Jones approached and stated, "he's lying to you. He doesn't have an account here." Jones then directed, "Come on let's get out of here." The three men left the bank together.

Hawkins drove the white Skylark, Pickett sat in the front passenger seat, and Jones sat in the back seat directly behind Pickett. Jones directed Hawkins to drive onto Interstate 16, and when Hawkins looked back he saw that Jones was holding a .380 caliber pistol. Moments later, Jones fired a shot into the back of Pickett's head, and then announced that "the man had disrespected me." Pickett slumped over into Hawkins' lap. Jones tossed the gun out of the car window, and he instructed Hawkins to exit the Interstate. He then directed Hawkins onto a dirt road where he ordered him to stop the

car. Jones got out and pulled Pickett's body from the car to the side of the road. Jones later told Hawkins that he had killed previously, and that "it gets easier after the first time."

The two drove to a friend's apartment where, at Jones' direction, Hawkins changed into clean clothing. Jones put Hawkins' bloody clothing in a plastic bag and threw the bag into the dumpster where it was later found by police. Hawkins testified that he did not know Jones was armed until he saw the pistol pointed at the victim's head, and that he followed Jones' instructions because he feared for his own life.

1. Jones asserts that the evidence was insufficient as a matter of law because his conviction was based solely on the uncorroborated testimony of an accomplice in violation of OCGA § 24-4-8.[3]

The jury was properly instructed on the definition of accomplice and was charged that, if they determined Hawkins was an accomplice, his testimony required corroboration. In order to verify their findings in this regard, a verdict form was submitted to the jury, asking them to determine: (1) whether Hawkins was an accomplice to the offense of murder, and (2) the guilt or innocence of the accused. Jones did not object to the jury instruction nor to the use of the verdict form.

The jury expressly concluded that Hawkins was not Jones' accomplice. "[W]here a witness testifies that he or she was forced to accompany the defendant[ ] out of fear . . . , it is for the jury to determine whether the witness is an accomplice." *Milton v. State*, 248 Ga. 192, 196 (2) (282 SE2d 90) (1981). The court properly allowed the jury to make this determination, based on the evidence adduced at trial. *Durham v. State*, 243 Ga. 408 (254 SE2d 359) (1979); *Milton*, supra. Because Hawkins was not an accomplice, we need not consider whether there was sufficient corroboration for his testimony.

2. Viewing the evidence in the light most favorable to the jury's verdict, a rational trier of fact could have found Jones guilty beyond a reasonable doubt of malice murder. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)

3. Jones asserts that reversible error resulted from the trial court's failure to grant a mistrial sua sponte due to an improper statement during the prosecutor's closing argument. In attempting to explain that Hawkins was guilty of a series of drug transactions, but not of the crime of murder, the prosecutor argued that "the State of

---

[3] OCGA § 24-4-8 provides in pertinent part:
The testimony of a single witness is generally sufficient to establish a fact. However, in . . . felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient. Nevertheless, corroborating circumstances may dispense with the necessity for the testimony of a second witness . . . .

Georgia, me, we have concluded that the real and only party to this crime is this man (Jones)." Upon objection by defense counsel the court cautioned the prosecutor to refrain from expressing his personal opinion as to what the evidence showed. Defense counsel did not renew his objection, nor did he request further instruction or other action from the court. Accordingly, the issue is not preserved for review. *Fann v. State*, 254 Ga. 514 (3) (331 SE2d 547) (1985). "[E]ven if the prosecutor's argument had been improper, there would be no reversible error unless there is a reasonable probability it changed the result of trial." *Crowe v. State*, 265 Ga. 582, 592 (18) (458 SE2d 799) (1995). We find no such probability.

4. Jones asserts that the trial court erred in allowing the prosecution to exclude from evidence a bloody T-shirt which was contained in the plastic bag found in the dumpster. Two shirts were found in the dumpster, but only one was identified at trial as having been connected with the crime, and that shirt was tendered into evidence by the State. Jones did not object to the exclusion of the other shirt, nor did he assert that it should be admitted. There was no error. *Earnest v. State*, 262 Ga. 494 (422 SE2d 188) (1992).

5. Jones asserts, for the first time on appeal, that certain comments by the trial court during the jury instruction amounted to a violation of OCGA § 17-8-57.[4] Because Jones neither objected to the allegedly offensive comments, nor did he generally reserve his right to later object to the jury charge, the issue was not preserved for appellate review. Compare *Sims v. State*, 266 Ga. 417 (2) (467 SE2d 574) (1996). Notwithstanding the failure to preserve the issue on appeal, we find this contention to be without merit. It is asserted that the court referred only to the fact that Jones was indicted for murder, and never made reference in the charge to the fact that Hawkins was also indicted in connection with the crime, thereby intimating that Hawkins was not an accomplice. We consider the charge as a whole to determine whether there has been a violation of OCGA § 17-8-57. The statute "is only violated when the court's charge assumes certain things as facts and intimates to the jury what the judge believes the evidence to be." *Mullinax v. State*, 255 Ga. 442, 445 (4) (339 SE2d 704) (1986). Here the court merely stated the contents of the indictment against the accused, and properly instructed that the court does not express an opinion as to whether the accused has

---

[4] OCGA § 17-8-57 provides:

It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. Should any judge violate this Code section, the violation shall be held by the Supreme Court or Court of Appeals to be error and the decision in the case reversed, and a new trial granted . . . .

been involved in any offenses. There was no violation of OCGA § 17-8-57.

*Judgment affirmed. All the Justices concur.*

DECIDED APRIL 14, 1997 —
RECONSIDERATION DENIED MAY 9, 1997.

*J. Michael Cranford,* for appellant.

*Charles H. Weston, District Attorney, Thomas J. Matthews, Assistant District Attorney, Michael J. Bowers, Attorney General, Beth Attaway, Assistant Attorney General,* for appellee.