S02A1160. SEDLAK v. THE STATE.
(571 SE2d 721)

THOMPSON, Justice.

Yolanda Adame Sedlak was convicted of felony murder in the stabbing death of her husband, Robert Sedlak.[1] Her defense at trial was justification based on battered person syndrome. On appeal, she challenges several aspects of the jury charge, and she asserts that she was denied effective assistance of trial counsel. Finding no

---

[23] *Clark v. State*, 271 Ga. 6, 9 (515 SE2d 155) (1999).

[24] Id.

[25] Id.

[1] The crime took place on June 27, 1998. An indictment was returned on February 8, 2000, charging Sedlak with malice murder and felony murder while in the commission of an aggravated assault. Trial commenced on February 28, 2000. On March 14, 2000, a jury acquitted Sedlak of malice murder and found her guilty of felony murder; she was sentenced on April 19, 2000 to life in prison. A motion for new trial was filed on May 16, 2001, amended on June 28, 2001, August 6, 2001, and August 7, 2001, and denied on January 15, 2002. A notice of appeal was filed on January 24, 2002. The case was docketed in this Court on April 18, 2002, and oral argument was heard on September 10, 2002.

reversible error, we affirm.

A neighbor placed a 911 call to report a stabbing at the mobile home occupied by the Sedlaks. The officers arrived at the Sedlaks' residence to find the victim on the floor in the master bedroom. He had been stabbed several times with a five-inch kitchen knife; the fatal wound had pierced the heart. While the police were investigating, Sedlak confessed to another neighbor (an off-duty police officer) that she had stabbed the victim.

Sedlak received *Miranda* warnings at the scene; she agreed to talk with the officers and consented to a search of her residence. In this initial statement, she told the officers that she and the victim had been arguing and while she was in the kitchen preparing dinner, he approached her with a knife in his hand; that she used a kitchen knife to "just poke at him"; and that he walked to the bedroom where she found him a few minutes later on the floor. She was unable to account for the presence of bruises on her arms and legs. A State-administered intoximeter test showed Sedlak's blood alcohol level to be .103.

Sedlak was taken to the sheriff's office later that evening where she was again read her *Miranda* rights and she executed a written waiver. She gave a second statement to the investigating officers in which she described her two-month marriage to Robert as tumultuous and abusive. She related the same version of the stabbing as she had previously.

Two days later, the police asked to interview Sedlak again. She received fresh *Miranda* warnings, and this time she admitted that the victim was unarmed when she stabbed him, and that she planted a knife near the body because she was afraid that she would be arrested. She claimed that the victim had been physically abusive toward her, but acknowledged that she had never reported the alleged abuse.

Two forensic pathologists testified that it would have required a significant amount of force to inflict the fatal wound because the murder weapon was not particularly sharp or pointed, and the entire blade of the five-inch knife had penetrated the victim's chest. Both experts opined that a "poke" or accidental motion would have been insufficient force to inflict the fatal wound. The experts further testified that the bruises to Sedlak's extremities were consistent with chronic alcohol abuse; and that the absence of bruises to her face, head, and upper chest indicates that she does not appear to have been beaten.

After presenting a prima facie case of justification, the defense offered expert testimony that Sedlak experienced both chronic post-traumatic stress disorder and battered person syndrome.

1. The evidence was sufficient to enable a rational trier of fact to

have rejected Sedlak's justification defense and to have found her guilty beyond a reasonable doubt of felony murder while in the commission of an aggravated assault. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

## *Jury Instructions*

2. Sedlak challenges several aspects of the general charge to the jury.

(a) The trial court did not err in charging the jury that evidence that the defendant suffered abuse at the hands of others may not be used in determining whether she acted with the fear of a reasonable person under the circumstances. In *Bryant v. State*, 271 Ga. 99, 101 (3) (515 SE2d 836) (1999), we held that a defendant asserting self-defense "could show other specific acts of violence committed against him and others by [the victim]. [Cit.] He could not, however, support that defense by the proffer of any evidence based upon the commission of extraneous acts of abuse upon him by anyone other than [the victim]." Accord *Lewis v. State*, 270 Ga. 891 (2) (515 SE2d 382) (1999). Because the charge in the present case was a correct statement of the law, there was no error. In addition, the jury was fully instructed on the defense of justification and the role of battered person syndrome in determining the reasonableness of Sedlak's conduct.

(b) The indictment charged Sedlak with the offense of felony murder while in the commission of an aggravated assault in that she assaulted the victim and caused his death by stabbing him with a knife, a deadly weapon. After instructing the jury on the elements of felony murder, the court went on to define aggravated assault under OCGA § 16-5-21 (a) (2). Since there is no reasonable possibility Sedlak was convicted of a crime in a manner not charged in the indictment, the instruction was not defective. See *Mercer v. State*, 268 Ga. 856 (2) (493 SE2d 921) (1998).

(c) There was no error in instructing the jury to attempt to reconcile conflicting testimony of witnesses without imputing false statements to either witness; but if they are unable to do so, the jury should determine which witnesses are best entitled to belief. *Mallory v. State*, 271 Ga. 150 (2) (517 SE2d 780) (1999); Suggested Pattern Jury Instructions, Vol. II: Criminal Cases (2nd ed. 1991) p. 9, par. F. Compare *Noggle v. State*, 256 Ga. 383 (4) (349 SE2d 175) (1986), in which this Court disapproved a charge that an unimpeached witness should be believed.

(d) Nor did the trial court's reference to the deceased as "the victim" in the course of charging the jury constitute an expression of opinion as to the guilt of the accused in violation of OCGA § 17-8-57. That "statute 'is only violated when the court's charge assumes cer-

tain things as facts and intimates to the jury what the judge believes the evidence to be.' [Cit.]" *Jones v. State*, 268 Ga. 12, 15 (5) (483 SE2d 871) (1997).

This Court has held that the trial court's use of the word "victim" in referring to the deceased does not amount to an improper opinion about the guilt of the accused under the statute. *Camphor v. State*, 272 Ga. 408 (6) (c) (529 SE2d 121) (2000). Nor is the statute violated because Sedlak offered a justification defense. A "victim" is defined in Webster's Third International Dictionary as "someone put to death . . . by another." Whether Sedlak was justified by law in committing the crime does not change the fact that the decedent was put to death by her.

In addition, the jury was instructed that they were not to construe any comment by the trial court as an expression of opinion on the facts or evidence, upon the credibility of witnesses, or upon the guilt or innocence of the accused. We consider the charge as a whole in determining whether there has been a violation of OCGA § 17-8-57. *Jones*, supra at 14 (2). Under the circumstances, we find neither error nor a reasonable probability that the reference to the decedent as "the victim" prejudiced the defense. See generally *Sims v. State*, 266 Ga. 417 (2) (467 SE2d 574) (1996).

(e) Sedlak submits that the trial court committed reversible error in failing to give a complete charge on the law pertaining to similar transaction evidence, even though such an instruction was not requested.[2]

In *State v. Belt*, 269 Ga. 763 (505 SE2d 1) (1998), we held that it is not reversible error for a trial court, absent a request, to fail to instruct a jury that similar transaction evidence admitted for a limited purpose must be considered only for the limited purpose for which it was admitted. In so doing we reversed a line of cases in which the Court of Appeals held to the contrary.[3] This was our holding, despite the fact that no limiting instruction "was ever given" in *Belt*, either contemporaneously with the introduction of the evidence,

---

[2] The charge as given was taken verbatim from the Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, 2nd ed.; however, the final paragraph of that section was omitted. The Pattern Instructions were revised by the Council of Superior Court Judges in January 1999 to include a final paragraph as follows:

I further instruct you that before you can consider any other transaction for the limited purposes referred to, you must first determine whether the accused committed the other transaction; if so, whether the act was similar enough to the crime charged in the indictment, so that proof of the other transaction, in light of the limited purpose for which it has been presented to you, tends to prove the crime charged in the indictment.

Sedlak's trial was held one year after the inclusion of this paragraph.

[3] *Prickett v. State*, 220 Ga. App. 244 (469 SE2d 371) (1996); *Moore v. State*, 202 Ga. App. 476 (414 SE2d 705) (1992).

or in the general charge to the jury. *Belt v. State*, 227 Ga. App. 425 (1) (489 SE2d 157) (1997).

Our rule in *Belt* has been consistently followed by this Court, as well as in countless decisions of the Court of Appeals. In *Murphy v. State*, 270 Ga. 72 (2) (c) (508 SE2d 399) (1998), we interpreted *Belt* to hold that a request must be made for an instruction informing the jury that they could not consider the extrinsic act evidence until the jury had determined that the defendant was the perpetrator of the extrinsic act, and we overruled Court of Appeals authority which held that a trial court is required to instruct the jury sua sponte that the jury must decide whether the defendant actually committed the extrinsic act before it could consider it during deliberations.[4]

The Court of Appeals in *Fuller v. State*, 235 Ga. App. 436 (2) (509 SE2d 79) (1998), interpreted our ruling in *Belt*, to hold that absent a request, a trial court is not required to charge that the jury had to determine whether the prior acts were similar enough to the crime charged so that proof of the former tended to prove the latter.

In *Smith v. State*, 270 Ga. 68, 70 (3) (508 SE2d 145) (1998) and *State v. Hinson*, 269 Ga. 862 (506 SE2d 870) (1998) we reiterated that " *'[r]egardless of when* the defendant wishes the jury instructed on the limited admissibility of similar transaction evidence, it is incumbent upon him to make a timely request to the trial court for such a charge.' [Cit.]" (Emphasis supplied.)

In the present case, the trial court conducted a hearing in accordance with USCR 31.3 (B), at the conclusion of which the court allowed the State to introduce evidence of a series of acts of domestic violence committed by the accused while in a state of intoxication against a former husband and boyfriend to show course of conduct and bent of mind. Prior to the introduction of this evidence, the court gave a complete limiting instruction concerning the three-prong predicate for admissibility under *Williams v. State*, 261 Ga. 640 (409 SE2d 649) (1991), and the limited purpose for which the jury could consider the evidence.

We find no compelling reason why our holdings in *State v. Belt*, supra, and its progeny, would not control the issue now under consideration. In the present case, the trial court correctly and completely instructed the jury on the law pertaining to similar transaction evidence contemporaneously with the admission of that evidence,[5] and

---

[4] Specifically, *Belt v. State*, supra and *Chisholm v. State*, 231 Ga. App. 835 (2) (500 SE2d 14) (1998).

[5] Unlike preliminary instructions given to a jury prior to the introduction of evidence, a limiting instruction given contemporaneously with the introduction of evidence is given because the evidence requires such an instruction. Consequently, it is to be followed. In the present case, the trial court prefaced its contemporaneous limiting instruction as follows: "Ladies and gentlemen, before this next witness takes the stand, I have an instruction for

the general charge included a correct, albeit partial, instruction on the subject. In *State v. Belt*, supra, we found no reversible error despite the fact that the jury was never given the applicable charge. If there is a material distinction between the failure to charge at all and the giving of an incomplete charge, the latter circumstance clearly enures to the benefit of the accused. Thus, Sedlak was treated more favorably than was Belt.

In accordance with the binding precedent of this Court, we hold that absent a request, it was not reversible error for the trial court to omit a portion of the suggested pattern instructions in its general charge. However, we repeat our admonition in *State v. Belt*, supra and *Lee v. State*, 270 Ga. 626 (513 SE2d 225) (1999), that it is the better practice to charge the jury correctly and completely on the admissibility of similar transaction evidence and the specific limited purpose for which it may be considered.

(f) Although Sedlak did not request a charge on prior difficulties between the defendant and the deceased, the trial court gave a complete limiting instruction contemporaneously with the introduction of the evidence, and instructed the jury on that principle of law in the general charge. Although the general charge on prior difficulties did not track the language of the Suggested Pattern Jury Instructions, supra, p. 26, par. P, it did not deviate materially from it. In reviewing the final charge as a whole, we are satisfied that the alleged minor omission did not render the charge deficient. "It is a fundamental rule that jury instructions must be considered as a whole in determining whether the charge contained error." *Pittman v. State*, 273 Ga. 849, 850 (4) (546 SE2d 277) (2001).

### *Ineffective Assistance of Trial Counsel*

3. Sedlak claims that she was denied effective assistance of trial counsel and that the counsel's deficient performance materially prejudiced her sole defense of justification.

"The standard for determining ineffective assistance of counsel is whether trial counsel's performance was deficient and, if so, whether the deficient performance prejudiced the defense." *Woods v. State*, 271 Ga. 452, 453 (2) (519 SE2d 918) (1999), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). This court gives deference to the trial court's factual findings, unless clearly erroneous, but independently applies the legal principles to the facts to determine the merits of a claim of ineffective assistance of counsel. *Callendar v. State*, 275 Ga. 115 (3) (561 SE2d 113) (2002). There is a strong presumption that counsel's conduct falls within the

---

you. *And you are to apply it to his testimony.*" (Emphasis supplied.)

wide range of reasonable professional assistance. *Rucker v. State*, 271 Ga. 426 (520 SE2d 693) (1999).

(a) It is asserted that trial counsel failed to give proper notice of intent to introduce evidence of prior violent acts by the victim against third persons as required under *Chandler v. State*, 261 Ga. 402 (3) (405 SE2d 669) (1991) and Uniform Superior Court Rules 31.1[6] and 31.6. In this regard, Sedlak asserts that trial counsel failed to use due diligence in attempting to locate the potential *Chandler* witnesses, with the result that much of the evidence that would have supported her justification defense was excluded.

At a hearing on the motion for new trial, trial counsel testified that one month prior to trial, he filed a notice of intent under *Chandler*. That notice included the information that was known to counsel at the time, i.e., two separate incidents of physical abuse by Robert Sedlak directed at the children of his former wives; and it contained a request to amend the notice as other evidence is discovered. In preparation for trial, counsel attempted to locate other witnesses who could testify to specific acts of violence directed against them by the victim, but without success.[7] Counsel employed a private investigator, but despite the investigator's efforts, no *Chandler* material was uncovered in this case. While counsel did locate two additional witnesses who could testify to the victim's treatment of two of his former spouses, counsel deemed that the information was not helpful to the justification defense and he made the tactical decision not to amend the *Chandler* notice with regard to those persons.

After the first week of trial, a second private investigative agency hired by the defense located a stepson of the victim who related that he had been physically and mentally abused by the victim about ten years earlier. Through this witness, defense counsel was able to make contact with Debra Grant, a former wife of the victim. It was shown that Grant had generally attempted to conceal her whereabouts from Robert Sedlak following the termination of their marriage, and that she had changed her last name twice since that time.

Defense counsel sought to amend his *Chandler* notice and to offer testimony from this witness that she and her children had suffered a pattern of physical and mental abuse at the hands of Robert

---

[6] "Notices of . . . the intention of the defense to introduce evidence of specific acts of violence by the victim against third persons, shall be given and filed at least ten (10) days before trial unless the time is shortened or lengthened by the judge." USCR 31.1. See also USCR 31.6.

[7] Counsel testified: "I visited courthouses. I called people. I spent time in the records room. . . . I went out to neighborhoods. I visited homes where [the victim's] ex-wives lived. . . . And talked to police officers in various counties and other witnesses and so forth."

Sedlak during the course of their marriage. The State objected based on untimely notice under USCR 31.1. Defense counsel made the necessary proffer by questioning Grant and her son concerning specific acts of violence directed against them by the victim. The trial court disallowed a great portion of the proffered testimony, finding that the State had been prejudiced by the lack of notice. However, Grant and two of her children were permitted to testify before the jury to limited acts of violence directed against them by Robert Sedlak because those acts were known to the prosecution.

When asked at a hearing on the motion for new trial why he did not seek a continuance or waive his speedy trial demand, defense counsel replied that he felt confident that the defense had exhausted all their efforts to locate additional *Chandler* material, that they were otherwise prepared for trial, and that his client urged him to get the case concluded.

The record amply supports the trial court's finding that counsel's performance in this regard did not fall below the range of reasonable professional conduct. See *Rucker*, supra.

(b) We also reject Sedlak's claim that trial counsel was ineffective in failing to request a jury instruction for the limited *Chandler* evidence that the trial judge allowed to be presented.

> [W]here, as here, the trial court gives a complete charge on justification and on the battered woman syndrome, there is no duty "to instruct the jury on prior violent acts by the victim," and there is no violation of the rule that "requires that a defendant's sole defense must be charged even when not requested."

(Citations omitted.) *Kennedy v. State*, 274 Ga. 396 (2) (554 SE2d 178) (2001). As in *Kennedy*, the trial court gave a complete charge on justification and battered person syndrome as it relates to the justification defense, and trial counsel was free to argue that the decedent's prior conduct toward third parties supported that defense.

(c) Third, Sedlak erroneously asserts that trial counsel failed to object to improper comments during the State's closing argument to the effect that Sedlak refused to be interviewed by the prosecution's expert on battered person syndrome. Although closing arguments were not recorded, trial counsel placed his objection on the record, and the trial court overruled it. Neither prong of *Strickland* was satisfied in this regard.

4. Sedlak asserts that the State improperly asked the medical examiner whether Sedlak was a battered woman, without qualifying the witness as an expert on battered person's syndrome. Sedlak objected to the question as originally posed, and the court instructed

the prosecutor to rephrase it to relate to the expert's observations. The prosecutor's rephrased question was asked and answered without objection. Because Sedlak failed to object to the subsequent question, she is precluded from pursuing this ground on appeal. *Kapua v. State*, 228 Ga. App. 193 (2) (491 SE2d 387) (1997). See also *Earnest v. State*, 262 Ga. 494, 496 (3) (422 SE2d 188) (1992).

*Judgment affirmed. All the Justices concur, except Fletcher, C. J., Sears, P. J., Hunstein, Carley and Hines, JJ., who concur specially as to Division 2 (e).*

FLETCHER, Chief Justice, concurring specially.

A trial court is not free to instruct the jury erroneously on an area of Georgia law simply because no party submitted a request to charge on the topic. Accordingly, while I agree that the jury instruction on similar transaction evidence that was given was not reversible error, I cannot agree with the rationale the majority relies upon to reach that conclusion in Division 2 (e), although I concur in the remainder of the opinion.

Trial courts are responsible for instructing the jury on the applicable law, and the charges given to the jury should be correct and complete.[8] The lack of a request to charge on an issue does not excuse the trial court from ensuring that it accurately and completely states Georgia law for all issues on which it instructs the jury.

Here, without a request from either party, the trial court instructed the jury on similar transaction evidence. That charge generally followed the pattern charge, with two additions, but omitted the final paragraph of the pattern charge. Inclusion of the final paragraph from the pattern charge would have helped to remove any possibility of a misleading jury instruction. Nonetheless, the charge that was given, albeit incomplete, adequately covered the legal principles applicable to the use of similar transaction evidence.[9] Accordingly, I agree that the trial court's charge on similar transaction evidence was not reversible error.

I am authorized to state that Justice Hunstein and Justice Hines join in this special concurrence.

SEARS, Presiding Justice, concurring specially.

I agree with the judgment of the majority opinion and concur in all divisions thereof, with the exception of Division 2 (e). In that divi-

---

[8] *Parker v. State*, 270 Ga. 256, 259 (507 SE2d 744) (1998); *Griffith v. State*, 264 Ga. 326, 327 (444 SE2d 794) (1994).

[9] See *Williams v. State*, 261 Ga. 640, 642 (409 SE2d 649) (1991) (similar transaction evidence admissible for limited purpose, assuming evidence shows defendant committed a different transaction that is sufficiently similar to indicted offense).

sion, the majority relies on *State v. Belt*[10] for its holding that no reversible error occurred when the trial court omitted a portion of the pattern charge on similar transaction evidence in its final instructions to the jury. I conclude, however, that *Belt* is inapplicable to the present case. *Belt* establishes that a defendant has the burden to request a charge on similar transaction evidence, and that in the absence of such a request, the defendant is procedurally barred from complaining on appeal that the trial court did not give such a charge.[11] *Belt* should not apply when the trial court, as in this case, sua sponte instructs the jury on similar transaction evidence. In such a case, as Chief Justice Fletcher notes in his special concurrence, the trial court must charge accurately on the applicable law.[12]

Thus, the proper analysis here is simply whether the trial court's instructions on similar transaction evidence were erroneous. In this regard, the trial court gave a complete and accurate limiting instruction on similar transaction evidence at the time that evidence was admitted.[13] In addition to the contemporaneous instruction, the trial court gave an accurate but incomplete limiting instruction on similar transaction evidence in its final charge to the jury. Significantly, the limiting instruction given in the final charge did not contradict the complete and accurate contemporaneous instruction. Because jurors are presumed to follow the instructions of the trial court, because the trial court's contemporaneous charge was complete and accurate, and because the limiting instruction in the final charge did not contradict the contemporaneous instruction, I conclude that the charge as a whole adequately informed the jury of the relevant principles concerning the similar transaction evidence.

For these reasons, I specially concur in Division 2 (e) of the

---

[10] 269 Ga. 763 (505 SE2d 1) (1998).

[11] *Belt*, 269 Ga. at 764 ("It follows that, having failed to request a limiting instruction, defendant cannot assert that the trial court erred because it did not give such an instruction.").

[12] See *People v. Key*, 203 Cal. Rptr. 144, 151 (Cal. App. 4th Dist. 1994) ("[A]lthough there is no sua sponte duty to give limiting instructions to tell jurors the precise purposes for which the evidence of prior criminal misconduct may be used, . . . when a trial court does give such an instruction specifically calling their attention to the significance of this substantially prejudicial evidence, it should do so accurately.").

[13] Regarding the subject of contemporaneous limiting instructions, see *United States v. Mark*, 943 F2d 444, 449, n. 2 (4th Cir. 1991), and *United States v. Hernandez*, 921 F2d 1569, 1583 (11th Cir. 1991), which note that a contemporaneous limiting instruction may have a more beneficial impact than a limiting instruction in a final charge; *United States v. Foster*, 939 F2d 445, 455-457 (7th Cir. 1991), which held that a contemporaneous limiting instruction was a sufficient instruction to the jury on how to consider evidence of prior crimes; and *United States v. Butler*, 102 F3d 1191, 1196-1197 (11th Cir. 1997), and *United States v. Ashby*, 864 F2d 690, 694 (10th Cir. 1988), which hold that when a trial court gives a contemporaneous limiting instruction, it is within the trial court's discretion whether to repeat the instruction in the final charge to the jury.

majority opinion. I am authorized to state that Justice Carley joins in this special concurrence.

DECIDED OCTOBER 15, 2002 —
RECONSIDERATION DENIED NOVEMBER 22, 2002.

*Brian Steel*, for appellant.
*J. David McDade, District Attorney, James E. Barker, Assistant District Attorney, Thurbert E. Baker, Attorney General, Ruth M. Bebko, Assistant Attorney General*, for appellee.