[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 05-16638
_____

D. C. Docket Nos. 03-21717 CV-CMA
03-20688-CV

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 6, 2007
THOMAS K. KAHN
CLERK

BURLEY GILLIAM,

                                  Petitioner-Appellant,

versus

SECRETARY FOR THE DEPARTMENT
OF CORRECTIONS,

                                  Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 6, 2007)

Before EDMONDSON, Chief Judge, DUBINA and PRYOR, Circuit Judges.

PER CURIAM:

Petitioner Burley Gilliam ("Gilliam") appeals the district court's denial of his 28 U.S.C. § 2254 petition challenging his conviction and death sentence. Gilliam argues that he suffered prejudice in violation of Brady v. Maryland, 83

S.Ct. 1194 (1963), and <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  We affirm the district court's denial of the petition.

## I.  BACKGROUND

In 1985, Gilliam was convicted of the first-degree murder and sexual battery of Joyce Marlowe ("Marlowe") and sentenced to death.  The Florida Supreme Court reversed the convictions and sentences on direct appeal and ordered a retrial.  At the retrial, the evidence established that Marlowe was last seen alive on 8 June 1982, in the company of Gilliam, whom she met at the Orange Tree Lounge where she worked as a dancer.  The bar's manager testified that Marlowe left the Orange Tree that evening with Gilliam, who had offered to take her to a nearby restaurant for a meal.  The evidence also showed these things:

> [On the evening of 8 June, Sandy] Burroughs, fishing on a lake, heard a woman screaming.  When he arrived on shore, he found a truck (later identified as the one Gilliam was driving) stuck in the sand, and its driver acting "very very nervous," but otherwise sober and normal.  The next day Burroughs noticed that the lake area was roped off, and was told by police that a woman had been raped and murdered.

> [Gilliam] gave several accounts of his activities on the day of the murder to Detective Merrit, and in so doing stated that he and the

2

victim were swimming in the lake and he ducked her under too long; he attempted resuscitation, but was unsuccessful.

Gilliam v. State, 582 So. 2d 610, 611 (Fla. 1991). The physical evidence and medical expert testimony, however, showed that Marlowe had been brutally raped and ultimately strangled to death.

At trial, Gilliam contended that he committed the crimes during an epileptic seizure. In support of this claim, he presented the testimony of several family members, who related their observations of his condition and testified about his abusive childhood. Gilliam also presented the testimony of a mental health expert, who opined that Gilliam could have committed the crimes during an "epileptic furor." Gilliam also testified and claimed that he had no memory of arriving at the lake or of the events that occurred thereafter.

During Gilliam's direct examination, defense counsel elicited testimony about a 1969 rape conviction, which Gilliam characterized as statutory rape for consensual sex with his minor girlfriend. On cross-examination, the State challenged Gilliam's characterization of the earlier rape, asking questions such as "[Y]ou weren't dating [the victim], were you?" and "[I]sn't it true that you dragged her into a field, you choked her unconscious . . . ?" Gilliam denied that the prior rape had been violent. In rebuttal, the State called as a witness one of the

3

investigating police officers of the prior rape, who testified that he had observed bruising on victim's neck and around her eye. The jury ultimately found Gilliam guilty, rejecting his insanity defense.

The penalty phase commenced after a weekend recess. Gilliam presented no additional evidence, and the jury recommended death. Then, at the sentencing hearing -- before the judge only -- Gilliam presented several additional witnesses, including a psychologist, a pathologist, and several family members. The judge sentenced Gilliam to death for the murder, finding three aggravating circumstances: (1) prior violent felony, (2) during the course of a sexual battery, and (3) heinous, atrocious, and cruel. The court found that these factors outweighed two nonstatutory mitigating circumstances: (1) Gilliam's abusive childhood, and (2) Gilliam's family's support and plea for his life.

In 1991, the Florida Supreme Court affirmed the convictions and death sentence on direct appeal. Gilliam did not petition the United States Supreme Court for certiorari review, but filed motions for state post-conviction relief in 1993 and 1995. Gilliam claimed, among other things, that (1) the State, in violation of Brady, suppressed evidence that the victim was a prostitute; (2) to the extent that defense counsel was aware of such evidence, he was ineffective under Strickland during the guilt phase for failing to introduce that evidence; (3) defense

4

counsel was ineffective for opening the door to evidence about the nature of his prior conviction; and (4) defense counsel was ineffective during the penalty phase for failing to present mitigating evidence to the jury, failing to investigate and present additional competent evidence about his mental health, and failing to make an effective closing argument. The state post-conviction court denied Gilliam's claims.

In 2002, the Florida Supreme Court affirmed the denial of post-conviction relief and denied Gilliam's petition for writ of habeas corpus. Gilliam then filed this petition in the Southern District of Florida in 2003, raising the same ineffective assistance and Brady claims. The district court denied the petition, concluding that the state supreme court's decision was not contrary to or an unreasonable application of Brady or Strickland. Gilliam now appeals the district court's order.

## II.  STANDARD OF REVIEW

Our review of Gilliam's habeas petition is limited by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Thus, we may only grant relief if the state court adjudication

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The Supreme Court has clarified that the phrase " 'clearly established Federal law . . . .' refers to the holdings of [the Supreme Court's] decisions as of the time of the relevant state-court decisions."  Williams v. Taylor, 529 U.S. 362, 412 (2000).

To be "contrary to" clearly established federal law, the state court must either (1) apply a rule "that contradicts the governing rule set forth by Supreme Court case law," or (2) reach a different result from the Supreme Court "when faced with materially indistinguishable facts."  Putnam v. Head, 268 F.3d 1223, 1241 (11th Cir. 2003).  And, for a writ to issue because the state court made an "unreasonable determination of the facts," the petitioner must rebut "the presumption of correctness [of a state court's factual findings] by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  Within these limits, we review the district court's findings of fact for clear error and questions of law and mixed questions of law and fact de novo.  Maharaj v. Sec'y for Dep't of Corr., 432 F.3d 1292, 1308 (11th Cir. 2006), cert. denied, 127 S.Ct. 348 (2006).

6

## III.  DISCUSSION

## A.  Gilliam's Brady Claim

Gilliam contends that the State, in violation of Brady, suppressed a police report indicating that Marlowe had a history of prostitution.  The district court determined that Gilliam failed to show that the Florida Supreme Court unreasonably applied the Brady standard in rejecting this claim.  We agree.

In Brady, the Supreme Court wrote that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."  Brady, 373 U.S. at 87.  But, evidence is only material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  United States v. Bagley, 473 U.S. 667, 682 (1985).  The state supreme court could reasonably determine that the police report fails to meet this standard for three reasons.  First, the inadmissibility of the report[1] supports the

---

[1]As the district court noted, we cannot review the state supreme court's determination that the report was inadmissible under Florida evidentiary law "unless it amounts to an egregious, unsupportable application of state law designed to frustrate [the petitioner's] Brady claim." Breedlove v. Moore, 279 F.3d 952, 964 (11th Cir. 2002).  Gilliam has made no such contention here.

7

state court's conclusion that the report is not material. See Wood v. Bartholomew, 516 U.S. 1, 5-6 (1995) (noting that inadmissible polygraph test was not "evidence" and therefore was not material); Breedlove, 279 F.3d at 964 (upholding FSC's denial of Brady claim based on inadmissibility of allegedly suppressed evidence and noting that "[i]nadmissible evidence could only rarely meet [Brady's materiality] standard–indeed no Supreme Court case . . . has found inadmissible evidence was material for Brady purposes").

Second, the state court reasonably concluded that evidence of the victim's history of prostitution was not important to Gilliam's insanity defense. Although the evidence may suggest – as Gilliam argues – that Marlowe accompanied Gilliam voluntarily on the night of the murder, it does not show that Gilliam lacked the requisite mental state to commit the crimes for which he was convicted. Third, the record shows that defense counsel did have a copy of the autopsy report – which indicated that an investigation had shown the victim to be a prostitute – and that he attempted, although unsuccessfully, to introduce this fact into evidence during the trial. That defense counsel's possession of further evidence of Marlowe's prostitution would have affected the outcome of the trial seems unlikely. The Florida Supreme Court's rejection of Gilliam's Brady claim was

therefore reasonable, and Gilliam is not entitled to federal habeas relief on this ground.

### B. Gilliam's Ineffective Assistance Claims

Gilliam also raises several claims of ineffective assistance of counsel during both the guilt and penalty phases of his trial. To satisfy the Strickland standard for ineffective assistance, a criminal defendant must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (en banc) (citations and internal quotation marks omitted).

In satisfying the deficiency element, the defendant must show that his counsel's performance was objectively unreasonable -- "that no competent counsel would have taken the action that his counsel did take." Id. at 1315. In deciding whether the defendant has met this burden, courts must "'indulge [the] strong presumption' that counsel's performance was reasonable" Id. at 1314 (quoting Strickland, 466 U.S. at 689-90). To meet the requisite burden for the prejudice

9

element, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt . . . [or] would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Strickland, 466 U.S. at 695. We conclude that Gilliam has failed to show that the Florida Supreme Court's rejection of his ineffective assistance claims was contrary to or an unreasonable application of Strickland.

### 1. Guilt Phase Claims

Gilliam's section 2254 petition raises two claims of ineffective assistance during the guilt phase of his trial. First, Gilliam argues that, to the extent that the allegedly suppressed police report was available to defense counsel, defense counsel was ineffective for failing to investigate adequately the victim's history. This argument is without merit. As we have said, defense counsel was aware of evidence indicating that Marlowe was a prostitute and offered evidence of that fact at trial. In addition, the lack of the additional evidence was not prejudicial.

Second, Gilliam argues that his defense counsel rendered ineffective assistance by "opening the door" to evidence of his prior rape conviction. The

10

state supreme court rejected this claim, concluding that Gilliam failed to show both substandard performance and prejudice. The district court concluded that defense counsel's performance was deficient but upheld the state court's ruling based on the lack of prejudice. We question whether the district court correctly determined that the Florida Supreme Court's deficient-performance conclusion was unreasonable. And, although we review not district court opinions, but their decisions, we are troubled that the district court's deficiency conclusion seems to rely in large part on the decision in Rompilla v. Beard, 545 U.S. 374 (2005), a case decided years after the Florida Supreme Court rendered its pertinent decision.

But, we need not resolve the controversy on the deficiency element because the Florida Supreme Court – as the district court observed -- reasonably concluded that Gilliam failed to establish prejudice under Strickland. Gilliam presented an insanity defense at his trial. The record shows that this defense was sufficiently compromised by other evidence. The State discredited Gilliam's expert's testimony by calling into question his expert's expertise and knowledge of the field of epilepsy and by introducing contradictory expert testimony. The State also elicited testimony from other witnesses, such as Burroughs, that contradicted Gilliam's representations of his condition on the evening of the murder. And, Gilliam's defense was further undermined by his initial statements to the police,

11

which were inconsistent with his defense at trial. Thus, the state supreme court reasonably determined that Gilliam failed to show a sufficient probability that the result of his trial would have been different absent evidence of his prior rape conviction.

## 2. Penalty Phase Claims

Gilliam raises three claims of ineffective assistance during the penalty phase of his trial. First, Gilliam contends that his defense counsel was ineffective for failing to present mitigating evidence to the jury during the sentencing phase and for choosing to present such evidence only to the judge. The Florida Supreme Court determined that defense counsel's decision did not constitute deficient performance and that Gilliam had failed to show prejudice. We see no ureasonable error in this determination.

The Florida Supreme Court could determine that it was reasonable for defense counsel to rest on the mitigating evidence of Gilliam's abusive childhood and mental health and drug problems presented during the guilt phase. See Waters v. Thomas, 46 F.3d 1506, 1512-13 (11th Cir. 1995) (en banc) (concluding that it was not unreasonable for counsel to rely on mitigating mental health evidence

12

presented during guilt phase). That defense counsel has refused to characterize the decision as strategic is not dispositive; the record shows that he investigated the facts, prepared mitigating witnesses, assessed the jury and concluded that they would be unreceptive to additional evidence, and relied on the judge's role as final decisionmaker under Florida law. This conduct was not inconsistent with Florida law, which provides that the "court has an independent obligation to determine appropriate punishment." Lambrix v. Singletary, 520 U.S. 518, 525-26 (1997). The state court's rejection of this claim was not unreasonable under Strickland.

In any event, Gilliam has not shown that the Florida Supreme Court erred in determining that he failed to satisfy the prejudice element. The mitigating evidence defense counsel presented to the judge was significantly discredited by the State, did not contradict the aggravating factor evidence presented by the State, or was cumulative to that presented at trial. Thus, the state supreme court could properly decide that there was no "reasonable probability" that four more members of the jury would have elected a life sentence if they had been presented with the mitigating evidence that was later presented to the judge. Cf. Hardwick v. Crosby, 320 F.3d 1127, 1190-91 (11th Cir. 2003) (finding prejudice where only one more juror vote needed for life sentence); Cave v. Singletary, 971 F.2d 1513, 1519 (11th Cir. 1992) (same).

13

Second, Gilliam contends that defense counsel failed to investigate and present additional mitigating evidence of Gilliam's substance abuse and abusive childhood, as shown by the additional expert testimony submitted in his state post-conviction proceedings. The Florida Supreme Court rejected this argument, finding that much of the proffered testimony was cumulative to that presented at trial. This decision was not contrary to nor an unreasonable application of Strickland. Testimony of Gilliam's drug and alcohol abuse and mental health was adduced at both the guilt and penalty phases of his trial. The state supreme court could properly conclude that Gilliam failed to show that, based on the evidence already known, a reasonable attorney must investigate further. See Alderman v. Terry, 468 F.3d 775, 792 (2006). That other experts may have been more persuasive does not mean that counsel's failure to retain those other experts was unreasonable. See Waters, 46 F.3d at 1514.

Third, Gilliam argues that defense counsel failed to make an effective closing argument to the jury at the penalty phase. He specifically contends that defense counsel made only passing mention of the mitigating circumstances, failed to address the aggravating factors, and invited the jurors to make a decision based on their personal feelings. The Florida Supreme Court's rejection of this contention is reasonable under Strickland. The Supreme Court has stated that it is

14

not unreasonable for counsel to focus on a few points in closing or to forego a closing argument altogether. Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003). And, contrary to Gilliam's assertions, we do not agree that defense counsel's closing argument exhibited a "total lack of focus on [the defendant's] individual character and record." Hall v. Washington, 106 F.3d 742, 750 (7th Cir. 1997). Defense counsel referenced the testimony of Gilliam's mother and siblings and his childhood, stating that Gilliam was not a "survivor." He also pointed out that life imprisonment would protect society and punish Gilliam.

Based on this analysis, we conclude that the state supreme court's rejection of Gilliam's ineffective assistance claims was reasonably consistent with Strickland. The district court therefore properly denied Gilliam habeas relief on those claims.

## IV. CONCLUSION

For the foregoing reasons, the district court properly denied Gilliam's 28 U.S.C. § 2254 petition. The district court's order is therefore affirmed.

AFFIRMED.