[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 3, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11215
Non-Argument Calendar
_____

D. C. Docket No. 03-03103-CV-CAM-1

YOLANDA SEDLAK,

                                        Petitioner-Appellant,

versus

E. W. SESSIONS, Warden,
Washington State Prison,

                                        Respondent-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(October 3, 2007)**

Before TJOFLAT, HULL and FAY, Circuit Judges.

PER CURIAM:

Yolanda Sedlak, who was convicted in Georgia state court of felony murder for the stabbing death of her husband, Robert Sedlak, appeals the district court's denial of her counseled petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254. In her petition, Sedlak argued that her trial counsel was ineffective for failing to timely uncover evidence that the victim had committed prior acts of violence against third parties, which would have supported her defense that she was suffering from battered woman's syndrome when she stabbed her husband, pursuant to Chandler v. State, 261 Ga. 402, 407 (Ga. 1991).[1] On direct appeal, the Georgia Supreme Court rejected Sedlak's ineffective-assistance-of-counsel claim. Sedlak now argues that the Georgia Supreme Court's holding was unreasonable given the facts presented at trial and the prevailing law regarding ineffective-assistance claims. For the reasons discussed below, we affirm.

Approximately one month before Sedlak's trial, Sedlak's trial counsel filed a notice of her intention to introduce evidence of the victim's prior acts of violence, namely, committing simple battery against "the son of Debbie Sedlak." In the notice, Sedlak reserved the right to supplement or amend this evidence. Then, approximately one week after her trial had begun, Sedlak's trial counsel filed

---

[1] In Chandler, the Georgia Supreme Court held that "evidence of specific acts of violence by a victim against third persons shall be admissible where the defendant claims justification." 261 Ga. at 407.

another notice of her intention to introduce evidence of the victim's prior acts of violence, namely, against Debra Sedlak, a previous wife of the victim.

However, when Sedlak attempted to call as witnesses Daniel Holloway, who was "the son of Debbie Sedlak" referred to in Sedlak's first notice, and Debra Sedlak, the previous wife referred to in Sedlak's second notice, the state objected on the grounds that Sedlak's notices were incomplete and untimely.[2] During a proffer, Daniel Holloway and Debra Sedlak both indicated that they would testify to an incident in which the victim beat Daniel Holloway with a baseball bat. The trial court sustained the state's objections. The trial court, however, allowed Debra Sedlak and her daughter, Tracy Holloway, to testify to an incident in which the victim got drunk and destroyed Tracy Holloway's porcelain figurine collection when she was 15 or 16 years old, and then punched her and hit Debra Sedlack when they protested.

After her trial, Sedlak, represented by new counsel, filed a motion for a new trial, arguing that her trial counsel was ineffective for failing to hire private investigators to timely uncover Debra Sedlak's testimony. The trial court held hearings on this motion. At these hearings, two private investigators testified that

---

[2] Pursuant to Georgia Uniform Superior Court Rules 31.1 and 31.6, a criminal defendant who intends to introduce evidence of prior violent acts committed by the victim against a third party must notify the prosecution at least ten days before trial, unless the time is shortened or lengthened by the trial court.

they were hired in connection with Sedlak's murder trial approximately two years before that trial began, but that Sedlak's trial counsel terminated this investigation and diverted their attention to other matters in which Sedlak was involved, such that they were never asked to, and never did, investigate the victim's background.

Also, Sedlak's trial counsel testified as follows. As part of his pre-trial preparation, he personally visited courthouses, record rooms, the homes of the victim's ex-wives, and the offices of police officers in search of evidence of any prior violent acts committed by the victim. His investigation did not yield any usable evidence. Confident that he had exhausted all avenues of investigation and knowing that Sedlak wanted to "get this matter behind her," Sedlak's trial counsel went ahead with the trial. On the first day of the trial, however, he hired a private investigator in a last-ditch effort. He had not hired one earlier because he believed that Sedlak had very limited resources. Ultimately, this private investigator discovered information that led Sedlak's trial counsel to Debra Sedlak. The district court denied Sedlak's motion for a new trial .

Sedlak then filed a direct appeal to the Georgia Supreme Court on, <u>inter alia</u>, ineffective-assistance-of-counsel grounds. The Georgia Supreme Court made the following findings of fact.

> A neighbor placed a 911 call to report a stabbing at the mobile home occupied by the Sedlaks. The officers arrived at the Sedlaks' residence

4

to find the victim on the floor in the master bedroom. He had been stabbed several times with a five-inch kitchen knife; the fatal wound had pierced the heart. While the police were investigating, Sedlak confessed to another neighbor (an off-duty police officer) that she had stabbed the victim.

Sedlak received Miranda warnings at the scene; she agreed to talk with the officers and consented to a search of her residence. In this initial statement, she told the officers that she and the victim had been arguing and while she was in the kitchen preparing dinner, he approached her with a knife in his hand; that she used a kitchen knife to "just poke at him"; and that he walked to the bedroom where she found him a few minutes later on the floor. She was unable to account for the presence of bruises on her arms and legs. A State-administered intoximeter test showed Sedlak's blood alcohol level to be .103.

Sedlak was taken to the sheriff''s office later that evening where she was again read her Miranda rights and she executed a written waiver. She gave a second statement to the investigating officers in which she described her two-month marriage to Robert as tumultuous and abusive. She related the same version of the stabbing as she had previously.

Two days later, the police asked to interview Sedlak again. She received fresh Miranda warnings, and this time she admitted that the victim was unarmed when she stabbed him, and that she planted a knife near the body because she was afraid that she would be arrested. She claimed that the victim had been physically abusive toward her, but acknowledged that she had never reported the alleged abuse.

Two forensic pathologists testified that it would have required a significant amount of force to inflict the fatal wound because the murder weapon was not particularly sharp or pointed, and the entire blade of the five-inch knife had penetrated the victim's chest. Both experts opined that a "poke" or accidental motion would have been insufficient force to inflict the fatal wound. The experts further testified that the bruises to Sedlak's extremities were consistent with chronic alcohol abuse; and that the absence of bruises to her face,

5

head, and upper chest indicates that she does not appear to have been beaten.

After presenting a prima facie case of justification, the defense offered expert testimony that Sedlak experienced both chronic post-traumatic stress disorder and battered person syndrome.

. . . At a hearing on the motion for new trial, trial counsel testified that one month prior to trial, he filed a notice of intent under Chandler. That notice included the information that was known to counsel at the time, i.e., two separate incidents of physical abuse by Robert Sedlak directed at the children of his former wives; and it contained a request to amend the notice as other evidence is discovered. In preparation for trial, counsel attempted to locate other witnesses who could testify to specific acts of violence directed against them by the victim, but without success. Counsel employed a private investigator, but despite the investigator's efforts, no Chandler material was uncovered in this case. While counsel did locate two additional witnesses who could testify to the victim's treatment of two of his former spouses, counsel deemed that the information was not helpful to the justification defense and he made the tactical decision not to amend the Chandler notice with regard to those persons.

After the first week of trial, a second private investigative agency hired by the defense located a stepson of the victim who related that he had been physically and mentally abused by the victim about ten years earlier. Through this witness, defense counsel was able to make contact with Debra Grant,[3] a former wife of the victim. It was shown that Grant had generally attempted to conceal her whereabouts from Robert Sedlak following the termination of their marriage, and that she had changed her last name twice since that time.

Defense counsel sought to amend his Chandler notice and to offer testimony from this witness that she and her children had suffered a pattern of physical and mental abuse at the hands of Robert Sedlak

---

[3] The Supreme Court used Debra Sedlak's name from a marriage subsequent to her marriage to the victim.

6

during the course of their marriage. The State objected based on untimely notice under [Georgia Uniform Superior Court Rules 31.1 and 31.6]. Defense counsel made the necessary proffer by questioning Grant and her son concerning specific acts of violence directed against them by the victim. The trial court disallowed a great portion of the proffered testimony, finding that the State had been prejudiced by the lack of notice. However, Grant and two of her children were permitted to testify before the jury to limited acts of violence directed against them by Robert Sedlak because those acts were known to the prosecution.

When asked at a hearing on the motion for new trial why he did not seek a continuance or waive his speedy trial demand, defense counsel replied that he felt confident that the defense had exhausted all their efforts to locate additional Chandler material, that they were otherwise prepared for trial, and that his client urged him to get the case concluded.

Sedlak v. State, 275 Ga. 746, 747, 752-53 (Ga. 2002) (internal footnote omitted).

Given these findings of fact, the Georgia Supreme Court held that "[t]he record amply support[ed] the trial court's finding that counsel's performance in this regard did not fall below the range of reasonable professional conduct," per Strickland v. Washington, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984). Sedlak, 275 Ga. at 752-53. The Georgia Supreme Court specifically noted that (1) Sedlak's trial counsel's first notice included all the information that he knew at the time and explicitly requested leave to amend if and when further information was found; (2) Debra Sedlak "generally attempted to conceal her whereabouts"; and (3) Sedlak's trial counsel stated that he did not seek a

7

continuance because he felt confident that he had exhausted all efforts to locate additional Chandler evidence, otherwise was prepared for trial, and Sedlak wanted to begin. Id.

After reviewing the Georgia Supreme Court's decision, the district court denied Sedlak's § 2254 petition. The district court reasoned that, while it was obvious in hindsight that Sedlak's trial counsel had prematurely terminated his private investigators's pre-trial investigation into the murder charge, it would not have been so obvious to Sedlak's trial counsel in the midst of his preparations that further investigation would have revealed Debra Sedlak's testimony. On Sedlak's subsequent motion, the district court granted a certificate of appealability as to whether Sedlak's trial counsel's assistance was ineffective.

Pursuant to § 2254,

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) and (2).

Regarding § 2254(d)(1), a state court decision is "contrary to" clearly established federal law "if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case." Putnan v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court conducts an "unreasonable application" of clearly established federal law "if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or if it "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." "[A]n 'unreasonable application' is an 'objectively unreasonable' application." Id.

The Supreme Court law that governs ineffective-assistance-of-counsel claims is set out in Strickland. Per this law, a defendant must demonstrate both professional error and prejudice to the outcome of the proceedings, and the failure to demonstrate either is dispositive of the claim against the petitioner. Strickland, 466 U.S. at 697, 104 S.Ct. at 2069. Counsel's performance is deficient only if it falls below the wide range of competence demanded of attorneys in criminal cases. Id. at 688, 104 S.Ct. at 2065. Counsel's deficient performance is prejudicial if

9

there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S.Ct. at 2068. Specifically with regard to trial counsel's duty to investigate his client's case, the Supreme Court has held that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary" and that "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Id. at 690-691, 104 S.Ct. at 2066.

Regarding § 2254(d)(2), which applies when the state court's decision was based on an unreasonable determination of the facts, "the petitioner must rebut the presumption of correctness [of a state court's factual findings] by clear and convincing evidence." Gilliam v. Sec'y for Dept. of Corr., 480 F.3d 1027, 1032 (11th Cir. 2007) (alteration in original) (citing 228 U.S.C. § 2254(e)(1) (holding that "a determination of a factual issue made by a State court shall be presumed to be correct" and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence")).

As a preliminary matter, although Sedlak stated in her § 2254 petition that the Georgia Supreme Court's decision was based on an unreasonable determination of the facts, she fails to present any argument or evidence in support of this

10

statement.  See Gilliam, 480 F.3d at 1032.  Moreover, our review of the Georgia Supreme Court's findings of fact reveals that they are a reasonable determination of the evidence presented at trial and at the hearings on Sedlak's motion for a new trial.  See Sedlak, 275 Ga. at 747.  Accordingly, Sedlak is not eligible for habeas relief pursuant to § 2254(d)(2).  See 28 U.S.C. § 2254(d)(2).

As to § 2254(d)(1), the record shows that the Georgia Supreme Court applied the appropriate Supreme Court rule, namely, Strickland.  See Putnam, 268 F.3d at 1241; Sedlak,  275 Ga. at 752-53.  The record also shows that the Georgia Supreme Court's application of Strickland to the facts was objectively reasonable. See Putnam, 268 F.3d at 1241.  First, Sedlak's trial counsel did not commit any unprofessional error.  See Strickland, 466 U.S. at 697, 688, 690-91, 104 S.Ct. at 2069, 2065, 2066. Sedlak's trial counsel's decision to divert his pre-trial private investigators to other matters was not unreasonable, as he already had visited courthouses, record rooms, the homes of ex-wives, and the offices of police officers and had found no usable evidence that the victim had abused third parties. Likewise, the decision not to hire a private investigator earlier in the investigation was not unreasonable, as Sedlak's trial counsel already had made the above investigative efforts to no avail and as he believed that Sedlak had limited means.

Second, any errors committed by Sedlak's trial counsel did not prejudice her

11

defense.  See Strickland, 466 U.S. at 694, 697, 104 S.Ct. at 2068, 2069.  The state presented extensive evidence of her guilt, including her confessions.  See Sedlak, 275 Ga. at 747.  Also, the jury was exposed to evidence that Sedlak may have stabbed her husband while suffering from battered woman's syndrome and that the victim had hit both Debra Sedlak and Tracy Holloway in the past.  See Sedlak, 275 Ga. at 747.  Therefore, there is no reasonable probability that the jury would have reached a different result had it heard more testimony of the victim's prior violence.  See Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.  Accordingly, Sedlak is not eligible for habeas relief pursuant to § 2254(d)(1).  See 28 U.S.C. § 2254(d)(1).  Therefore, we affirm the district court's denial of Sedlak's § 2254 petition.

**AFFIRMED.**