309 Ga. 124
FINAL COPY

S20A0177.  REDDING v. THE STATE.

BLACKWELL, Justice.

Merrick Redding was tried by a Muscogee County jury and convicted of murder and aggravated assault in connection with the death of Joseph Davis.[1] Redding appeals, asserting that the evidence is legally insufficient to sustain his convictions, that he was denied his constitutional right to a speedy trial, and that certain evidence was admitted erroneously at trial. Although the evidence is sufficient to sustain the convictions, we conclude that the trial court

---

[1] Davis died on September 6, 2016. On May 22, 2018, a Muscogee County grand jury indicted Redding, charging him with murder with malice aforethought, murder in the commission of a felony (aggravated assault), and aggravated assault with a "closed fist." Redding was tried in October and November 2018. The jury acquitted him of malice murder, but it found him guilty on the other two counts. In December 2018, the trial court sentenced Redding to imprisonment for life without the possibility of parole for felony murder and a concurrent term of imprisonment for 20 years for aggravated assault. Redding timely filed a motion for new trial, and after a hearing, the trial court denied the motion on June 4, 2019. Redding timely filed a notice of appeal, and his appeal was docketed to the December 2019 term of this Court and submitted for a decision on the briefs.

failed to apply the proper standard to the claim that Redding was denied his right to a speedy trial. For that reason, we vacate the judgment below and remand for the trial court to resolve that claim under the proper standard. We decline at this point to address the remaining claims of error.[2]

1. Viewed in the light most favorable to the verdict, the evidence presented at trial shows the following. On September 5, 2016, Jason Bellamy hosted a barbeque at his house for his family. During the barbeque, Davis came over to visit. Redding also came to the house with his young grandchildren, though Redding had not been invited. Around the time of the incident, Bellamy was preparing to grill meat in an area adjacent to the house that

---

[2] In his other enumerations of error, Redding contends that the trial court erred when it admitted certain other acts evidence under OCGA § 24-4-404 (b) and when it allowed the State to impeach him with his prior convictions without expressly finding that the probative value of this evidence outweighed its prejudicial effect. We do not address these claims, as they "might be rendered moot by the trial court's speedy trial ruling on remand." Goins v. State, 306 Ga. 55, 55 n.1 (829 SE2d 89) (2019). We do address the sufficiency of the evidence, however, because if Redding prevails on this issue, "his conviction[s] would be reversed and he could not be retried," irrespective of the speedy trial issue. See id.

witnesses characterized as an outdoor patio or carport. Davis was leaning against a truck in the driveway, "talking to friends" and "taking it easy." Another resident of the house, Debbie Render, also was sitting outside. Bellamy's stepfather, Jerry Ferrell, was in the washroom vacuuming up water, but he came out to the patio periodically.

While standing at the grill, Bellamy saw Redding approach Davis and start talking to him. Bellamy could not hear what Redding was saying, but he heard Davis repeatedly tell Redding, "Leave me alone." Both Bellamy and Render testified that they heard Davis ask something like, "Why do you think I'm a p***y motherf****r?" They also heard Redding call to Ferrell to "come get" Davis. Bellamy further testified that Davis said to Redding, "Go get a job . . . I work hard for my money, why won't you get a job," and turning to Bellamy, Davis said, "What's wrong with him, Jason?" Bellamy did not think much of this confrontation and went inside the house laughing, but he kept looking through the screen door to see "what's going on," and he saw Redding move closer to Davis.

As Bellamy went back outside through the kitchen door, he saw Redding hit Davis once in the head. Bellamy testified that, just before the hit, Redding

> looked back because I was in the house. You know, he looked back and he said something to [Ferrell], you know, while he was looking back, and when he turned around, he turned around and just swung like this. You know, and when he swung, it was like he was walking away at the same time.

Demonstrating the hit in front of the jury, Bellamy described it as a "swing" with his right hand (rather than a "forward punch"), and he testified that Redding hit Davis with a "closed" fist. Render, who also observed the incident, similarly testified that Redding "just hit [Davis] 'side the head with his fist. . . . It was loud." Both Bellamy and Render testified that Redding hit Davis with his right hand and that the blow landed somewhere on the left side of Davis's head. Both also testified that Davis did not provoke Redding before being hit.

As soon as Davis was hit, Bellamy testified, "it just looked like all life left out of him. . . . He fell straight down. He never moved

from the position he had been in all day. He fell straight down and he slumped up against my tire on my truck." Bellamy explained that Davis did not fall over and hit his head on something, but rather "went straight down. And when I got there, he was sitting up on the side of my truck just like I'm sitting in this chair, and it sounded like he was snoring. . . . [H]e hadn't hit his head." Render also testified that Davis did not hit his head while falling: "He just went around like that and he just like slid down beside the truck."

Davis was taken to the hospital, but he never regained consciousness and was taken off life support the next day. Dr. Steven Atkinson, the medical examiner who conducted an autopsy on Davis, testified that there was a "large abrasion in the back of the head on the left side," as well as a fracture on the back right side of the skull. Dr. Atkinson explained that the fracture "was more centered on the back right, but . . . it crossed the midline and went into the back left, but it also wrapped around and went into the base of the skull." Dr. Atkinson concluded that the cause of death was blunt force head trauma, and that the head injury could have resulted from any blunt

object, including a fist strike to the head or the head hitting the ground.

Redding testified in his own defense. He said that he came to Bellamy's house at the request of Ferrell, who had asked him to help with a washing machine. After doing some work inside the washroom, Redding sat on the patio and had a beer. Sometime later, Redding testified, Davis came to the carport area from a shed nearby where people were known to take drugs. According to Redding, Davis then purchased some crack cocaine from Bellamy, and this transaction occurred near the truck. Redding testified that he then came up to Davis to trade beers, but after a verbal exchange, Davis pushed him twice and "poked" him. This prompted Redding to hit Davis with an "open hand slap." Redding testified that Davis stumbled back a little, slid down the side of the truck, and fell to the ground, hitting his head on the concrete "lip."[3]

---

[3] In addition to Redding's testimony, the defense called a toxicology expert who had tested Davis's blood for the presence of cocaine and cocaine metabolites. The expert testified that the test detected the presence of two cocaine metabolites, but no recordable amount of actual cocaine. The expert

2. Redding contends that the evidence is insufficient to sustain his convictions. He argues that the evidence shows that he hit Davis only once and that the hit was not particularly forceful.[4] Redding also suggests that his punch did not necessarily cause Davis's death because he punched Davis on the left side of the face, but the injury was on the right side of his head. We disagree.

Redding was convicted of felony murder in the commission of an aggravated assault. A person commits aggravated assault when, among other things, he assaults another "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]" OCGA § 16-5-21 (a) (2). We have stated that "fists and feet are not deadly weapons per se," but "they can become such instruments when used to strike another." Skaggs v. State, 278 Ga.

_____

could not tell, based on these results, at what time Davis had taken cocaine or how much he had consumed.

[4] Bellamy testified that, when Davis slumped over from the punch, Bellamy "thought maybe [Davis] had a stroke or something because, you know, I've seen people get hit harder. And, you know, [Redding] hit him kind of hard, but I don't think — it didn't look like he hit him that hard to do that to him. . . ."

19, 20 (1) (596 SE2d 159) (2004). Whether a fist was used as a deadly weapon in a particular case is for the jury to decide. See Dasher v. State, 285 Ga. 308, 311 (3) (676 SE2d 181) (2009). See also Harwell v. State, 270 Ga. 765, 767 (1) (512 SE2d 892) (1999) ("Whether a weapon is deadly or one likely to cause serious bodily injury is a question for the jury, which may consider all the circumstances surrounding the weapon and the manner in which it was used.").

Here, the testimony of two witnesses shows that Redding, without provocation, swung his hand and hit Davis on the side of his head with a closed fist. Those witnesses also testified that Davis did not fall and hit his head after he was struck, which indicates that the blow was hard enough to fracture Davis's skull, as revealed by the autopsy.[5] And the medical examiner testified that Davis's cause of death was blunt force trauma to the head. We conclude that the

---

[5] We note that, even if the fatal injury was caused by Davis's falling and hitting his head on concrete, this might not have absolved Redding of felony murder. See Skaggs, 278 Ga. at 20 (1) (defendant was guilty of felony murder predicated on aggravated assault because, while "the immediate cause of [victim's] death was the injuries he suffered in the fall, the fall itself was the direct and immediate result of the blows administered by [defendant]").

evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Redding committed aggravated assault upon Davis and that this felony proximately caused Davis's death. See Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); Miller v. State, 275 Ga. 730, 731 (1) (571 SE2d 788) (2002) (evidence was sufficient to find aggravated assault and felony murder where defendant struck the victim with his fist in the back of the head, causing a fatal injury). See also Graham v. State, 301 Ga. 675, 677 (1) (804 SE2d 113) (2017) ("[I]t is the role of the jury to resolve conflicts in the evidence and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." (citation and punctuation omitted)).

3. Redding contends that the trial court erred when it failed to dismiss the indictment on the ground that his constitutional right to a speedy trial was violated. The record shows that Redding was arrested on September 12, 2016, one week after the incident. Redding was granted a bond on March 2, 2017, but he apparently

was unable to post the bond amount and so remained in jail. On September 28, 2017, Redding filed a "Motion to Dismiss Charge Based on Violation of Constitutional Right to Speedy Trial." At that point, Redding had not yet been indicted, and he noted in his motion that he had repeatedly asked for his case to be presented to a grand jury and that one of the few witnesses to the incident had died.[6] The trial court scheduled a hearing on the motion for November 30, 2017, but, as the State concedes, there is no record that a hearing was held that day. On April 17, 2018, Redding filed a request for a hearing on his speedy trial motion. The trial court held a hearing—apparently on May 9, 2018 — but did not make any ruling at the time of the hearing.[7] Redding was indicted on May 22, 2018, and his trial began on October 29, 2018.

---

[6] Redding did not mention the name of that deceased witness in the motion. In his brief on appeal, he asserts that it was Ferrell who died while his case sat unindicted, though Redding does not say when he died. The timing of Ferrell's death is not apparent from the record.

[7] The transcript of that hearing does not appear in the record.

Redding's motion came up again at a pre-trial hearing on October 24, 2018, less than a week before trial. The trial court asked about Redding's arrest, and the prosecuting attorney said that Redding had been arrested for a violation of probation and the outstanding warrants on "the rest of these charges." The prosecutor also told the court, "Just got the toxicology and the Crime Lab reports in this year. I took it to the grand jury right afterward." The trial court then stated:

> I overrule the motion on [the speedy trial] because of the violation of probation. The toxicology reports and other documents, police reports they had to accumulate in order to take the case to the grand jury for the charge of murder . . . .

The trial court did not enter a written order.

A constitutional speedy trial claim is evaluated under a two-part framework. Johnson v. State, 300 Ga. 252, 257 (3) (794 SE2d 60) (2016) (citing Barker v. Wingo, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972), and Doggett v. United States, 505 U. S. 647 (112 SCt 2686, 120 LE2d 520) (1992)). First, the trial court must consider "whether the length of time between the defendant's arrest and trial

is sufficiently long to be considered 'presumptively prejudicial.' If not, the speedy trial claim fails at the threshold." <u>Goins v. State</u>, 306 Ga. 55, 57 (2) (b) (829 SE2d 89) (2019) (citation and punctuation omitted). A delay of one year or more is "typically presumed to be prejudicial." Id.

If the presumptive-prejudice threshold is crossed, as it was in this case, the trial court "proceeds to the second part of the framework, applying a context-focused, four-factor balancing test to determine whether the defendant was denied the right to a speedy trial." <u>Johnson</u>, 300 Ga. at 257 (3). These four factors are "(1) the length of the delay; (2) the reasons for it; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant." Id. This second part of the speedy trial analysis "requires courts to engage in a difficult and sensitive balancing process and necessarily compels them to approach speedy trial cases on an ad hoc basis." <u>Ruffin v. State</u>, 284 Ga. 52, 56 (2) (b) (663 SE2d 189) (2008) (citation and punctuation omitted).

Because the analysis of a speedy trial claim is "fact-intensive," and because we review the trial court's ruling on such a claim for abuse of discretion, "it is imperative that the trial court enter findings of fact and conclusions of law consistent with Barker. Absent such findings, there is no exercise of discretion for this Court to review." Goins, 306 Ga. at 57-58 (2) (b) (citations and punctuation omitted); Higgenbottom v. State, 288 Ga. 429, 430 (704 SE2d 786) (2011). See also Johnson, 300 Ga. at 258 (3) ("It is not the job of an appellate court to apply the Barker-Doggett framework in the first instance.").

Here, the trial court barely expressed any findings of fact or conclusions of law when it verbally denied Redding's speedy trial motion. Nothing in the court's brief statement suggests that it conducted the four-factor balancing test mandated by the Barker–Doggett framework. Furthermore, Redding's speedy trial claim does not strike us as so patently meritless that its denial is certain and that a remand for consideration of this issue would be a waste of judicial resources. For this reason, we vacate the trial court's order

denying Redding's constitutional speedy trial motion, we vacate Redding's convictions, and we remand this case "for the entry of an order containing appropriate findings of fact and conclusions of law on the speedy trial claim." <u>Goins</u>, 306 Ga. at 58 (2) (c) (citation and punctuation omitted).[8]

<u>Judgment vacated and case remanded with direction. All the Justices concur</u>.

DECIDED JUNE 16, 2020.
Murder. Muscogee Superior Court. Before Judge Peters.
*Kennon Peebles, Jr.*, for appellant.
*Julia F. Slater, District Attorney, Ray W. Daniel, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.

---

[8] If the trial court denies Redding's speedy trial motion, it should reenter the judgment of conviction on the jury verdict and resentence Redding accordingly. In that regard, as the State concedes, Redding's aggravated assault count should merge with the felony murder count. See <u>Norris v. State</u>, 302 Ga. 802, 805 (III) (809 SE2d 752) (2018) ("[B]ecause the crime of aggravated assault . . . was the underlying felony for the felony murder conviction, it should have merged with the felony murder conviction for sentencing purposes."). If the trial court reenters judgment, Redding may file a notice of appeal, and in his new appeal, he may raise again the issues raised in his current appeal that we decline to address today, as well as any issue arising from the proceedings on remand.