320 Ga. 107
FINAL COPY

S24A0834. REDDING v. THE STATE.

LaGrua, Justice.

Following a 2018 jury trial, Appellant Merrick Redding was found guilty of felony murder and aggravated assault in connection with the death of Joseph Davis. This is Redding's fourth appeal to this Court. In his first three appeals, we vacated the trial court's judgment and remanded for the trial court to apply the correct facts and legal analysis to Redding's allegation of a violation of his Sixth Amendment right to a speedy trial.[1] See *Redding v. State*, 309 Ga. 124 (844 SE2d 725) (2020) ("*Redding I*"); *Redding v. State*, 313 Ga. 730 (873 SE2d 158) (2022) ("*Redding II*"); *Redding v. State*, 318 Ga. 225 (897 SE2d 801) (2024) ("*Redding III*").[2]

---

[1] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. . . ." U. S. Const. Amend. VI.

[2] The crimes occurred on September 5, 2016. Redding was arrested for Davis's killing on September 12, 2016. On September 28, 2017, Redding filed a "Motion to Dismiss Charge Based on Violation of Constitutional Right to Speedy Trial." On April 24, 2018, a Muscogee County grand jury indicted

On remand after *Redding III*, the trial court denied Redding's speedy-trial motion a fourth time. Redding then filed this appeal, raising his constitutional speedy-trial claim again along with claims that the trial court erred by allowing the State to impeach him with

Redding for malice murder, felony murder, and aggravated assault with a "closed fist." He was reindicted on the same charges on May 22, 2018. At a trial from October 24 to November 5, 2018, the jury found Redding not guilty of malice murder but guilty of the remaining counts. The trial court orally denied the speedy-trial motion at the pretrial conference and ultimately sentenced Redding to life in prison without the possibility of parole for felony murder and a concurrent term of 20 years to serve in prison for aggravated assault. Redding filed a timely motion for new trial, which the trial court denied on June 4, 2019. Redding filed a timely notice of appeal, and in *Redding I*, this Court held that the evidence presented at Redding's trial was legally sufficient to support his murder conviction but otherwise vacated the judgment and remanded the case for the trial court to make factual findings and legal conclusions regarding Redding's speedy-trial motion. 309 Ga. at 129-130 (3). On remand, the trial court merged the aggravated assault count into the felony murder conviction, resentenced Redding to serve life in prison without the possibility of parole for felony murder, and entered its first written order denying Redding's speedy-trial motion. Redding filed a timely notice of appeal. In *Redding II*, this Court again vacated the judgment and remanded for further proceedings on the speedy-trial motion "because the trial court misstated and misapplied the law regarding the prejudice factor, failed to weigh each *Barker* factor, and conflated its consideration of some of the factors." 313 Ga. at 736 (2). See *Barker v. Wingo*, 407 U. S. 514 (92 SCt 2182, 33 LE2d 101) (1972). On remand, the trial court entered a second written order denying the speedy-trial motion on March 6, 2023. Redding filed a timely notice of appeal. In *Redding III*, this Court a third time vacated the judgment and remanded because the trial court "erred factually and legally and should have weighed factors one and two against the State." 318 Ga. at 232 (2) (e). On remand, the trial court entered a third written order denying the speedy-trial motion on March 4, 2024. Redding filed a timely notice of appeal, and the case was docketed to this Court's April 2024 term and submitted for a decision on the briefs.

prior convictions under OCGA § 24-6-609 ("Rule 609") and that the trial court erred by admitting evidence of prior acts under OCGA § 24-4-404 (b) ("Rule 404 (b)").[3] We affirm.

As recited in *Redding I*, the evidence presented at trial showed the following:

> On September 5, 2016, Jason Bellamy hosted a barbeque at his house for his family. During the barbeque, Davis came over to visit. Redding also came to the house with his young grandchildren, though Redding had not been invited. Around the time of the incident, Bellamy was preparing to grill meat in an area adjacent to the house that witnesses characterized as an outdoor patio or carport. Davis was leaning against a truck in the driveway, "talking to friends" and "taking it easy." Another resident of the house, Debbie Render, also was sitting outside. Bellamy's stepfather, Jerry Ferrell, was in the washroom vacuuming up water, but he came out to the patio periodically.
>
> While standing at the grill, Bellamy saw Redding approach Davis and start talking to him. Bellamy could not hear what Redding was saying, but he heard Davis repeatedly tell Redding, "Leave me alone." Both Bellamy and Render testified that they heard Davis ask something like, "Why do you think I'm a p***y motherf****r?" They also heard Redding call to Ferrell to "come get" Davis. Bellamy further testified that Davis said to Redding, "Go get a job . . . I work hard for my money, why won't you get

---

[3] Redding raised his Rule 609 and Rule 404 (b) claims in his previous appeals, but we declined to address them given our remand on the speedy-trial claim.

a job," and turning to Bellamy, Davis said, "What's wrong with him, Jason?" Bellamy did not think much of this confrontation and went inside the house laughing, but he kept looking through the screen door to see "what's going on," and he saw Redding move closer to Davis.

As Bellamy went back outside through the kitchen door, he saw Redding hit Davis once in the head. Bellamy testified that, just before the hit, Redding ["]looked back because I was in the house. You know, he looked back and he said something to [Ferrell], you know, while he was looking back, and when he turned around, he turned around and just swung like this. You know, and when he swung, it was like he was walking away at the same time.["]

Demonstrating the hit in front of the jury, Bellamy described it as a "swing" with his right hand (rather than a "forward punch"), and he testified that Redding hit Davis with a "closed" fist. Render, who also observed the incident, similarly testified that Redding "just hit [Davis] 'side the head with his fist . . . . It was loud." Both Bellamy and Render testified that Redding hit Davis with his right hand and that the blow landed somewhere on the left side of Davis's head. Both also testified that Davis did not provoke Redding before being hit.

As soon as Davis was hit, Bellamy testified, "it just looked like all life left out of him. . . . He fell straight down. He never moved from the position he had been in all day. He fell straight down and he slumped up against my tire on my truck." Bellamy explained that Davis did not fall over and hit his head on something, but rather "went straight down. And when I got there, he was sitting up on the side of my truck just like I'm sitting in this chair, and it sounded like he was snoring. . . . [H]e hadn't hit his head." Render also testified that Davis did not hit his head while falling: "He just went around like that and he

4

just like slid down beside the truck."

Davis was taken to the hospital, but he never regained consciousness and was taken off life support the next day. Dr. Steven Atkinson, the medical examiner who conducted an autopsy on Davis, testified that there was a "large abrasion in the back of the head on the left side," as well as a fracture on the back right side of the skull. Dr. Atkinson explained that the fracture "was more centered on the back right, but . . . it crossed the midline and went into the back left, but it also wrapped around and went into the base of the skull." Dr. Atkinson concluded that the cause of death was blunt force head trauma, and that the head injury could have resulted from any blunt object, including a fist strike to the head or the head hitting the ground.

Redding testified in his own defense. He said that he came to Bellamy's house at the request of Ferrell, who had asked him to help with a washing machine. After doing some work inside the washroom, Redding sat on the patio and had a beer. Sometime later, Redding testified, Davis came to the carport area from a shed nearby where people were known to take drugs. According to Redding, Davis then purchased some crack cocaine from Bellamy, and this transaction occurred near the truck. Redding testified that he then came up to Davis to trade beers, but after a verbal exchange, Davis pushed him twice and "poked" him. This prompted Redding to hit Davis with an "open hand slap." Redding testified that Davis stumbled back a little, slid down the side of the truck, and fell to the ground, hitting his head on the concrete "lip."

*Redding I*, 309 Ga. at 125-126 (2) (punctuation omitted).

1. Redding contends that the trial court again erred by denying

his speedy-trial motion. We see no abuse of discretion.

As we have explained, "[a] constitutional speedy-trial claim is evaluated under the two-part framework set out in *Barker v. Wingo*, 407 U.S. 514, 530 [ ] (92 SCt 2182, 33 LE2d 101) (1972), and *Doggett v. United States*, 505 U.S. 647, 652 [ ] (112 SCt 2686, 120 LE2d 520) (1992)." *Redding III*, 318 Ga. at 226 (1). Part one asks whether the delay in bringing the defendant to trial was presumptively prejudicial. Id. Generally, a delay of a year or more between a defendant's arrest and trial is long enough to be considered presumptively prejudicial, and we held in *Redding I* that the threshold was crossed here. *Redding I*, 309 Ga. at 129 (3). This appeal concerns part two, where the trial court "appl[ies] a context-focused, four-factor balancing test to determine whether the defendant was denied the right to a speedy trial." *Redding III*, 318 Ga. at 226 (1) (citation and punctuation omitted). These four factors are (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant from the delay. Id.

When reviewing the trial court's application of the balancing test, this Court "must accept the factual findings of the trial court unless they are clearly erroneous, and we must accept the ultimate conclusion of the trial court unless it amounts to an abuse of discretion. . . ." *Henderson v. State*, 310 Ga. 231, 235 (2) (850 SE2d 152) (2020) (citation and punctuation omitted). But,

> if the trial court's factual findings are clearly erroneous or the trial court significantly misapplies the law, then the trial court's exercise of discretion can be affirmed only if the appellate court can conclude that, had the trial court used the correct factual and legal analysis, it would have had no discretion to reach a different judgment. If the trial court would still have discretion to reach a different judgment, we remand for the trial court to reweigh the factors and exercise its discretion using the correct factual and legal analysis.

*Redding III*, 318 Ga. at 227 (1) (citation and punctuation omitted); see also *State v. Pickett*, 288 Ga. 674, 678-680 (2) (d) (706 SE2d 561) (2011). In *Redding III*, we held that the trial court's order denying Redding's speedy-trial motion contained factual and legal errors in its analysis of the length-of-delay and reasons-for-delay factors and that the trial court should have weighed those two factors against

7

the State rather than neutrally. Id. at 232 (2) (e). Although we explained that "the trial court may be authorized to deny Redding's speedy-trial motion after assigning weight and balancing anew the four factors in accordance with the applicable law and directions outlined in this opinion," we also explained that, in Redding's case, "the trial court is [not] necessarily compelled to do so." Id. Therefore, we remanded "for the entry of an order containing appropriate findings of fact and conclusions of law on the speedy-trial claim." Id. at 232-233 (2) (e).

In its new order, the trial court weighed the length-of-delay and reasons-for-delay factors slightly against the State in accordance with *Redding III* and weighed the assertion-of-right factor slightly against Redding. Redding does not dispute these three factors. We see no factual or legal errors, and we hold that the trial court did not abuse its discretion in weighing these three factors as it did.

Redding disputes only the prejudice factor, which the trial court weighed heavily against Redding. "The prejudice associated

8

with unreasonable delay before trial includes oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the accused's defense will be impaired by dimming memories and loss of exculpatory evidence." *Henderson*, 310 Ga. at 239 (2) (d) (citation and punctuation omitted). Redding's arguments here fail because he merely repeats the arguments that we rejected in *Redding III*. Redding again claims that a potential witness died during the pretrial delay, but the trial court found — just as it did before — that the witness's death did not prejudice Redding's defense. The trial court also again found that Redding did not suffer any kind of pretrial oppressiveness or anxiety due to the delay. In *Redding III*, we already held that the trial court did not abuse its discretion in weighing this factor heavily against Redding for these same reasons. See *Redding III*, 318 Ga. at 231-232 (2) (d). Under the law-of-the-case rule, that holding is binding here. See OCGA § 9-11-60 (h).

The trial court ultimately weighed the four *Barker-Doggett* factors together and found that Redding's Sixth Amendment right

9

to a speedy trial was not violated. The trial court did not misapply the law or make erroneous factual findings. We hold that the trial court did not abuse its discretion in its ultimate decision to deny Redding's speedy-trial motion. See *Cash v. State*, 307 Ga. 510, 515-520 (2) (b) (837 SE2d 280) (2019) (holding that the trial court did not abuse its discretion in denying speedy-trial claim after weighing factors one and two "benignly" and not "too heavily" and against the State but factors three and four against the defendant).

2. Redding contends that the trial court failed to comply with Rule 609 when it allowed the State to impeach Redding with three prior convictions — from 2015, 2009, and 2007 respectively — without specifying how the court weighed the convictions' probative value against their prejudicial effect. We review this question of law de novo. See, e.g., *Wilder v. State*, 290 Ga. 13, 15 (2) (717 SE2d 457) (2011) (holding that on a motion to suppress, the trial court's "application of the law to undisputed facts is subject to de novo review") (citation and punctuation omitted).

We conclude that the trial court did not err by admitting

Redding's 2015 and 2009 convictions without listing on the record the factors supporting its finding that the probative value of the convictions outweighed their prejudicial effect. We further conclude that any assumed error in the admission of the 2007 conviction was harmless.

(a)  *The Evidence Admitted Under Rule 609*

Rule 609 applies when a witness's character for truthfulness can be impeached with a prior criminal conviction. Subsection (a) provides the general rule: certain prior convictions "shall be admitted if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect to the accused." Rule 609 (a) (1). But subsection (b) lays out different requirements for convictions where more than ten years have elapsed since "the date of the conviction or of the release of the witness from the confinement imposed for such conviction, whichever is the later date[.]" Rule 609 (b). Such convictions are admissible only if "the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts

and circumstances *substantially* outweighs its prejudicial effect." Id. (emphasis supplied).

At trial, after Redding announced that he was going to testify, the State sought permission to impeach Redding with evidence of three felony convictions: (1) a 2015 habitual violator conviction; (2) a 2009 obstruction of an officer conviction; and (3) a 2007 obstruction of an officer conviction. The trial court expressly ruled that the probative value of these three convictions outweighed their prejudicial effect and admitted them under Rule 609 (a) (1). While cross-examining Redding, the State questioned him regarding these three past convictions, which Redding admitted, further testifying that he had pleaded guilty and "served [his] time, [his] punishment" for them. Records of the convictions were admitted as exhibits over defense counsel's objection.

Redding argues that the trial court erred by failing to identify on the record the specific factors that formed the basis of its conclusion that the probative value of the three prior convictions

12

outweighed their prejudicial effect.[4] Redding was tried pursuant to the current Evidence Code, and the trial court admitted the prior convictions under Rule 609 (a) (1). Since the adoption of the current Evidence Code, we have not yet addressed whether Rule 609 (a) (1) requires a trial court to explain on the record what factors it considered when concluding that the probative value of a prior conviction outweighs its prejudicial effect. We hold that it does not.

"Rule 609 of Georgia's new Evidence Code is materially

---

[4] Again, Redding does not argue that the trial court's ultimate conclusion was an abuse of discretion or that the trial court was wrong to weigh the probative value against the prejudicial effect as it did. He merely argues that the trial court erred by making an express conclusion about probative value and prejudicial effect without also putting on the record the factors it considered to reach that conclusion. In support of this contention, Redding cites *Quiroz v. State*, 291 Ga. App. 423, 428-429 (4) (662 SE2d 235) (2008), a decision concerning Rule 609 (a) (1)'s predecessor in the old Evidence Code, OCGA § 24-9-84.1 (a) (2). In *Quiroz*, the Court of Appeals listed factors for trial courts to consider when balancing the probative value of a prior conviction against its prejudicial effect. Id. However, in *Clay v. State*, 290 Ga. 822 (725 SE2d 260) (2012), this Court addressed *Quiroz* and held that OCGA § 24-9-84.1 (a) (2) did not *require* a trial court to list the specific factors it considered in ruling on the probative value of convictions not more than ten years old. Id. at 836-837 (3) (B). Having said that, because Georgia's Rule 609 is "materially identical to Rule 609 of the Federal Rules of Evidence, . . . we look to federal case law with respect to the interpretation and application of the rule." *Brown v. State*, 307 Ga. 24, 30 (3) n.2 (834 SE2d 40) (2019) (punctuation omitted). See also *Anderson v. State*, 307 Ga. 79, 84 (3) (b) n.14 (834 SE2d 830) (2019) (citing to *Brown*). Thus, *Quiroz* and *Clay* no longer control this issue.

identical to Rule 609 of the Federal Rules of Evidence, and, as such, we look to federal case law with respect to the interpretation and application of [Rule 609]." *Anderson v. State*, 307 Ga. 79, 84 (3) (b) n.14 (834 SE2d 830) (2019) (citation and punctuation omitted). *United States v. Preston*, 608 F2d 626 (5th Cir. 1979)[5] is a leading case on this question. There the Court of Appeals for the Fifth Circuit held that

> a Trial Judge must make an on-the-record finding that the probative value of admitting a prior conviction outweighs its prejudicial effect before admitting a non-609 (a) (2) prior conviction for impeachment purposes under [Federal] Rule 609 (a) (1). . . . Although the Rule does not on its face mandate, we think it useful for Trial Judges to conduct a hearing on-the-record at which the pertinent factors are explicitly identified and weighed.

Id. at 639 (citation and punctuation omitted). Other federal courts have interpreted Rule 609 (a) (1) the same way. See, e.g., *United States v. Martinez-Martinez*, 369 F3d 1076, 1088 (II) (E) (9th Cir. 2004) ("While a trial court need not analyze each of the five factors

---

[5] The Eleventh Circuit has adopted as binding precedent decisions made by the Fifth Circuit handed down on or before September 30, 1981. See *Bonner v. City of Prichard*, 661 F2d 1206, 1209 (II) (11th Cir. 1981) (en banc).

explicitly, the record should reveal, at a minimum, that the trial judge was aware of the requirements of Rule 609 (a) (1)." (citation and punctuation omitted)); *United States v. Lipscomb*, 702 F2d 1049, 1064 (III) (A) (D.C. Cir. 1983) ("A comparison of Rule 609 (a) (1) with Rule 609 (b) strongly suggests that Rule 609 (a) (1) does not require the district court always to inquire into the facts and circumstances underlying a prior felony conviction.").

We adopt *Preston*'s holding that Rule 609 (a) (1) does not mandate an explicit analysis of factors; we also reiterate *Preston*'s observation about the usefulness of an explicit analysis of factors.

Here, the trial court made an on-the-record finding that the probative value of Redding's three prior convictions outweighed their prejudicial effect. For the 2015 and 2009 convictions, that was sufficient to admit them under Rule 609 (a) (1). Contrary to Redding's argument, Rule 609 (a) (1) did not require the trial court to put on the record the specific factors supporting that finding. See *Preston*, 608 F2d at 639. Thus, the trial court did not legally err when it admitted Redding's 2015 and 2009 convictions without

15

expressly stating any specific factors regarding probative value and prejudicial effect. With respect to the 2007 conviction, the record is unclear about whether Redding was released more than ten years before his trial. If so, the trial court should have analyzed that conviction under Rule 609 (b), which imposes a stricter standard for admission than Rule 609 (a).[6] However, assuming without deciding that Rule 609 (b)'s more stringent standard applies, and that the trial court erred by admitting the 2007 conviction, we conclude that any such error was harmless.

(b) *Harmless Error Analysis*

"The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." *Moore v. State*, 307 Ga. 290, 293 (2) (835 SE2d 610) (2019) (citation and punctuation omitted). In making our determination,

---

[6] Rule 609 (b) prohibits the admission of a conviction more than ten years old unless the trial court "determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances *substantially* outweighs its prejudicial effect." OCGA § 24-6-609 (b) (emphasis supplied).

16

"we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done[.]" Id. (citation and punctuation omitted). "In the context of Rule 609, error is harmless if the witness' credibility was sufficiently impeached by other evidence, or if the State's case was strong enough to support a conviction even apart from the witness' testimony." *Patterson v. State*, 314 Ga. 167, 179 (3) (875 SE2d 771) (2022) (citation and punctuation omitted). Here, eyewitnesses Bellamy and Render "sufficiently impeached" Redding's credibility. Id. Both witnesses testified that Redding struck Davis in the head with a closed fist, without any provocation. Bellamy characterized Redding's behavior as "bullying," and testified that, after Redding hit Davis, blood started "trickling" from Davis's ear. Render testified that the strike was "loud" enough for her to hear it from where she was sitting. We conclude that it is highly improbable that evidence of Redding's 2007 conviction for obstruction of a police officer, discussed in further detail in Division 3 (a) below, contributed to the jury's verdict. See, e.g., *Dennard v. State*, 305 Ga. 463, 466 (2) (826 SE2d 61) (2019)

17

(holding that any error in the admission of felony convictions over ten years old without making on-the-record findings that their probative value outweighed their prejudicial effect was harmless because "the evidence of murder was overwhelming, while the evidence of provocation was scant at best").

3. In a related enumeration of error, Redding contends that the trial court erred in admitting other-acts evidence under Rule 404 (b). We review the trial court's ruling admitting such evidence under Rule 404 (b) for abuse of discretion, see *Pritchett v. State*, 314 Ga. 767, 774 (2) (a) (879 SE2d 436) (2022), and conclude that any abuse of discretion was harmless.

(a)   *The Evidence Admitted Under Rule 404 (b)*

Rule 404 (b) concerns the admissibility of a defendant's "crimes, wrongs, or acts" other than the crime charged. The Rule provides that these other acts are not admissible "to prove the character of a person in order to show action in conformity therewith." OCGA § 24-4-404 (b). But other acts are admissible for certain other purposes, including "motive, opportunity, intent,

18

preparation, plan, knowledge, identity, or absence of mistake or accident." Id.

Prior to trial, the State gave notice pursuant to Rule 404 (b) that it intended to offer evidence of two other acts involving obstruction of a law enforcement officer (resulting in the 2007 and 2009 obstruction convictions referenced above). The trial court admitted the other-acts evidence for purposes of intent, plan, and to disprove mistake, accident, and self-defense.

During trial, the State presented evidence of the two other acts. Regarding the first incident, a law enforcement officer testified that in 2006 he attempted a traffic stop of Redding's vehicle due to outstanding warrants. Redding stopped his vehicle, exited, and fled. The officer pursued Redding and was attempting to arrest him when they began to engage in "close quarters combat." The officer testified that he "could smell the alcohol on [Redding's] breath," and that Redding "attempted several times to try to gain control" of the officer's weapon. The officer testified that he thought Redding was attempting to harm him, and he was concerned for his own safety

19

during the encounter.

Regarding the second incident, a law enforcement officer testified that in 2008 he conducted a traffic stop of Redding's vehicle. Redding exited his vehicle and "was kind of unsteady on his feet." The officer smelled alcohol and attempted to "grab [Redding's] wrist" when Redding "swung back, not swinging at [the officer] but just — he just didn't want [the officer] to grab his hand." Another law enforcement officer "tried to grab [Redding's] hand . . . and [Redding] just swung away." Then, Redding "pulled back" and "t[ook] an aggressive stance." The law enforcement officer used his taser on Redding who grabbed it but "never once swung at [the officer] or tried to hit [him]."

(b)   *Harmless Error Analysis*

Many on this Court have serious doubts that this other-acts evidence should have been admitted. However, assuming without deciding that the trial court abused its discretion in admitting the evidence, we conclude that any such error was harmless and thus does not require reversal.

20

As we stated above, nonconstitutional error is harmless where "it is highly probable that the error did not contribute to the verdict." *Moore*, 307 Ga. at 293 (2) (citation and punctuation omitted). Again, "we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done[.]" Id. (citation and punctuation omitted). "Generally, we have found Rule 404 (b) errors harmless where the properly admitted evidence was so strong that the prejudicial effect of the other-acts evidence had no significant influence on the guilty verdicts." *Nundra v. State*, 316 Ga. 1, 6 (2) (885 SE2d 790) (2023) (citation and punctuation omitted).

Here, the evidence against Redding was strong. Bellamy and Render testified that Redding and Davis were engaged in an argument when Redding hit Davis. During the argument, Bellamy heard Davis tell Redding to "leave me alone," and both witnesses heard Davis ask Redding something similar to "do you think I'm a p***y?" Bellamy saw Davis wave his hand in the air as if to tell Redding to leave, but neither Bellamy nor Render saw Davis physically provoke Redding or touch him in any manner. Both

witnesses testified that Redding then used his right hand to hit Davis on the left side of his head in a swinging motion with a closed fist. Both also testified that Davis fell down after the hit, his body slumping against a truck and blood coming out from his ear. Medical evidence showed that Davis died from the injury to his head.

On the stand, Redding similarly testified that Davis repeatedly asked him, "Do y'all think I'm a p***y?"; but, in contrast to Bellamy and Render, Redding claimed that Davis pushed and poked him as well. Redding nonetheless did not dispute that he hit Davis and caused him to fall, but Redding claimed he did so only with an open hand and only after that physical provocation.

Based on our review, it is clear that Redding's claim of self-defense was weak, relying only on his self-serving testimony. In contrast, evidence of Redding's guilt was strong, having been corroborated by the testimony of two eyewitnesses and the physical evidence showing that Davis died of blunt force head trauma causing "severe" brain injury and hemorrhage. See *Johnson v. State*, 301 Ga. 277, 279 (2) (800 SE2d 545) (2017) (holding that even if erroneously

admitted, other-acts evidence was harmless where appellant testified that he accidentally stabbed the victim in self-defense, in part because other testimony instead detailed "appellant's lengthy and persistent attack upon the unarmed victim"). See also *Mondragon v. State*, 304 Ga. 843, 844-845 (2) (823 SE2d 276) (2019) (holding that any error in sequencing Rule 404 (a) (2) evidence was harmless because other evidence showed that the shooting victims did not provoke appellant, were unarmed, and were shot from several feet away, which contrasted with appellant's testimony that the victims were pushing him when he fired at them).

Indeed, it is difficult to see how the other-acts evidence here would have had a "significant influence" on the jury. See *Nundra*, 316 Ga. at 6 (2). Both incidents occurred over eight years prior to the murder and were not materially similar to Redding's charges in this case. Redding was accused of felony murder predicated on aggravated assault after an argument at a friend's barbeque, while the other-acts evidence detailed belligerent (and possibly drunken) behavior at two traffic stops — behavior that did not result in any

23

injuries to others. To the extent that the other-acts evidence still painted Redding as an aggressive and agitable person, such evidence painted that picture no clearer than Redding himself, who admitted that he hit Davis after minimal provocation with enough force to knock him to the ground.

Moreover, Redding testified that he pleaded guilty to the offenses and that he "served [his] time, [his] punishment" for them. This "reduces the risk that the jury convicted [Redding] to punish him for his other crimes," because the jury heard that Redding "had already been punished for those crimes." *Nundra*, 316 Ga. at 7 (2). Further, the State did not mention the other-acts evidence in its opening statement, and only briefly referenced it in closing argument, which minimized the prejudicial effect. Finally, the trial court provided limiting instructions regarding the other-acts evidence, both after the law enforcement officers testified about the traffic stops,[7] and again in the court's charge of law to the jury. See,

---

[7] The court instructed the jury that:
In order to prove its case — and that's the case that you're

24

e.g., *Howell v. State*, 307 Ga. 865, 875 (3) (838 SE2d 839) (2020)

(holding that any error in the admission of other-acts evidence was

---

hearing — on this indictment on Counts 1, 2 and 3, the State of Georgia, once again, must prove each and every element of each charge in that indictment, and they must show in order to do that the elements of intent or a plan, or must negate or disprove mistake, an accident, or self-defense in this case.

To do so, the State has offered evidence of other crimes allegedly committed by the accused. You are permitted to consider that evidence only insofar as it may relate to those issues of intent, plan or disprove mistake, accident, or self-defense, and not for any other purpose. You may not infer from such evidence that the defendant is of a character that would commit such crimes in this indictment.

The evidence may be considered only to the extent that it may show the intent element or issues that the State is required or authorized to prove in the crimes charged in this case now on trial. Such evidence, if any, may not be considered for you — by you for any other purpose.

The defendant is on trial for the offenses charged in this bill of indictment only, and not for any other acts, even though such acts may incidentally be criminal and may have results [sic] in a conviction.

Before you consider any other alleged acts for the limited purposes stated here, you must first determine whether it is more likely than not that the accused did commit the alleged act. If so, you must then determine whether those alleged acts shed any light on the elements of the offenses or issues for which the act was admitted and the crimes charged in the indictment in this trial.

Remember to keep in mind the limited use and the prohibited use of this evidence about other acts of the defendant.

By giving this instruction, the Court in no way suggests to you the defendant has or has not committed any other acts, nor whether such act, if committed, prove[s] anything. That is a matter totally within the province of the jury and for your determination.

25

harmless in light of the other strong evidence of guilt and the trial court's limiting instructions, and noting that "[w]e ordinarily presume that jurors follow their instructions"); *Taylor v. State*, 306 Ga. 277, 283 (2) (830 SE2d 90) (2019) (holding that any error in the admission of other-acts evidence was harmless, noting that "the State spent a minimal amount of time eliciting evidence concerning the [other act], presenting just two witnesses who took the stand briefly, and there is no contention that the State mentioned or relied upon the incident during its closing argument to the jury"). We therefore conclude that it is highly improbable that any error in admitting the other-acts evidence contributed to the verdict.

4. Although Redding does not argue that we should conduct a cumulative error review, we conclude that the record does not reflect cumulative error.

To establish cumulative error necessitating a new trial, "an appellant must show that (1) at least two errors were committed in the course of the trial; and (2) considered together along with the entire record, the multiple errors so infected the jury's deliberation

26

that they denied the appellant a fundamentally fair trial." *Greene v. State*, 316 Ga. 584, 607-608 (7) (889 SE2d 864) (2023) (citation and punctuation omitted). See also *State v. Lane*, 308 Ga. 10, 14-18 (1) (838 SE2d 808) (2020). Considering the strength of the evidence (as already discussed) and the harmlessness of any individual errors, we conclude that the presumed errors at issue here did not "so infect[ ] the jury's deliberation" that combined they denied Redding a fundamentally fair trial. *Greene*, 316 Ga. at 608 (7). See also *Kirkland v. State*, 318 Ga. 639, 664 (11) (898 SE2d 536) (2024) (identifying no cumulative error from erroneously admitted other-acts evidence and improper jury instructions considering the strong evidence of guilt). Therefore, the trial court's errors, if any, do not merit reversal.

*Judgment affirmed. All the Justices concur.*

Decided October 1, 2024 — Reconsideration denied October 22, 2024.

Murder. Muscogee Superior Court. Before Judge Peters.

*Kennon Peebles, Jr.*, for appellant.

*Stacey S. Jackson, District Attorney, Frederick Lewis, Sadhana P. Dailey, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Meghan H. Hill, Michael A. Oldham, Clint C. Malcolm, Senior Assistant Attorneys General, Grace G. Griffith, Assistant Attorney General*, for appellee.