**FOURTH DIVISION**
**MERCIER, C. J.,**
**DILLARD, P. J., and LAND, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 2, 2025**

# In the Court of Appeals of Georgia

A25A0143. UNDERWOOD v. THE STATE.

LAND, Judge.

After a jury trial, Michael Underwood was found guilty of one count each of kidnapping, battery, cruelty to children, obstruction of an officer, and two counts of aggravated assault. He appeals from the denial of his motion for new trial, arguing that the trial court erred in admitting certain other-acts evidence, allowing the State to call a "surprise expert witness," denying his motion for continuance regarding the surprise expert witness, and admitting hearsay evidence concerning an alleged conversation between a witness and trial counsel. Underwood also argues that the evidence was insufficient as to the obstruction count, that his trial counsel was

ineffective, and that he was cumulatively prejudiced by these errors. Because we conclude that the trial court erred in admitting the other-acts evidence, we reverse.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LEd2d 560) (1979).

So viewed in favor of the verdict, the record shows that on December 5, 2020, Underwood's girlfriend, Megan Israel, drove to Underwood's home and removed nearly all of its contents. Later that day, Israel returned to Underwood's home without her car. After an argument, Israel walked out and contacted Underwood's daughter, Brittany Anderson, asking her to pick her up and to call the police. While Israel was walking, Underwood drove up behind her "at a high rate of speed." Israel ran into a neighbor's yard. At trial, Israel denied that Underwood forced her into the vehicle but

2

testified that she did not want to get into the vehicle, that she was screaming, and that Underwood was "pulling onto [her] arm" towards the vehicle.[1] Underwood then drove back to his house.

Brittany Anderson and her then-husband, Tyler Anderson, testified that they, along with their toddler, came to Underwood's house after Israel asked them for help and to call the police. Brittany testified that when they arrived, Israel "[j]umped" into the backseat of their car, "wanted me to take her somewhere and I didn't want to be in it," and that Israel was "hanging on to [their two-year old] son's carseat."[2] Brittany testified that she attempted to get Israel out of her car "numerous times," including by "pull[ing] her out" and that Underwood then attempted to "help get her out."[3] Tyler testified that he intervened to try to calm Underwood down, but that

---

[1] A video of Israel's interaction with law enforcement after the incident was played for the jury.

[2] Brittany denied that Underwood intended to harm her son.

[3] Although Brittany denied at trial that Underwood "physically" tried to remove Underwood from the car, she admitted that she told law enforcement that Underwood was trying to drag Israel out of the car.

Underwood bit him, poked him in the eye, and pinned him down while holding his arm over Tyler's throat.[4]

Sumter County Sheriff's Deputy Bentley Thornhill responded to Brittany's 911 call. Although Underwood fled the scene, Deputy Thornhill interviewed Israel and the Andersons. The next day, an investigator with the Sumter County Sheriff's Office, Chad Ciani, received information that Underwood was at his father's car lot on Highway 19. Investigator Ciani testified that when he arrived at the lot, he saw Underwood "in his silver Tahoe talking to another vehicle." Investigator Ciani pulled into the lot, activated his lights, and honked his horn. Underwood began to back up his vehicle despite Investigator's Ciani's commands over the PA to stop and then ran away on foot. Dashcam and bodycam recordings of the incident were played for the jury at trial.

Underwood was charged with six counts stemming from the incident: one count of kidnapping (OCGA § 16-5-40) and one count of aggravated assault (OCGA § 16-5-21) involving Israel, one count of aggravated assault (OCGA § 16-5-21) and one count of battery (OCGA § 16-5-23.1) involving Tyler Anderson, one count of cruelty to

---

[4] Brittany testified that Tyler "full out grabb[ed]" Underwood from behind and "escalated" the situation, and denied seeing Underwood choke Tyler.

children (OCGA § 16-5-70 (D)) involving the Andersons' toddler, and one count of obstruction of an officer (OCGA § 16-10-24 (A)). After a jury trial, Underwood was found guilty of all charges. He filed a motion for new trial, which was amended. After a hearing, the trial court denied the motion. This appeal followed.

1. Underwood argues that the trial court erred in admitting certain 404 (b) evidence and in not giving a limiting instruction as to that evidence. We agree.

Under OCGA § 24-4-404 (b), "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith," but such other-acts evidence is admissible for other purposes, including to prove motive, intent, plan, or identity.

> The party offering evidence under Rule 404 (b) must show three things: (1) that the evidence is relevant to an issue in the case other than the defendant's character; (2) that the probative value of the evidence is not substantially outweighed by its undue prejudice; and (3) that there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act.

*Heard v. State*, 309 Ga. 76, 84 (3) (b) (844 SE2d 791) (2020). A trial court's ruling on the admissibility of evidence under Rule 404 (b) is reviewed for abuse of discretion. See *Heard*, 309 Ga. at 85 (3) (b).

The State served notice of its intention to present evidence under Rule 404 (b) to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." At a hearing on the State's 404 (b) motion, the State proffered that the other act evidence would show that Underwood was separately charged with battery family violence in Stewart County for "body-slamming" Brittany Anderson and argued that the evidence "shows a pattern of, the similarity of violence against women when they are not listening to what you want them to do."

During the hearing, the trial court found that the evidence was "relevant" but did not specify the admissible purposes for the evidence. Similarly, the trial court's written order granting the motion stated only that the other acts evidence was "not being offered to raise an improper inference as to the Defendant's character, but for some appropriate purpose."

At trial, Brittany and Tyler testified that, approximately two weeks prior to the incident on trial, Brittany and Underwood got into an argument while they were sitting in Underwood's truck. Underwood grabbed Brittany by her shirt, pulled her out of the truck, and "slammed" her on the ground before driving away. Brittany testified that she reported the incident to law enforcement. Although Underwood

objected prior to Brittany's testimony, he did not request a limiting instruction and none was given. Moreover, the trial court did not give any jury charge on other-acts evidence.

(a) *Relevance*. OCGA § 24-4-401 defines "relevant evidence" as evidence that "ha[s] any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "This is a binary question – evidence is either relevant or it is not." (Citation and punctuation omitted.) *Heard*, 309 Ga. at 84-85 (3) (b).

Here, although the State served notice of its intention to present evidence under Rule 404 (b) to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident," the trial court's ruling finding the other-acts evidence admissible is unclear as to whether the other acts evidence was admissible to show one, some, or all of the State's proposed purposes. During the hearing, the trial court found that the evidence was "relevant" but did not specify the admissible purposes for the evidence. And the trial court's written order granting the motion stated only that the other acts evidence was "not being offered to raise an improper inference as to the Defendant's character, but for some appropriate

7

purpose." On appeal, moreover, the State argues only that the other acts evidence was relevant to show Underwood's knowledge, intent, motive, and the lack of mistake or accident.

(i) *Knowledge*. The State argues that the other-acts evidence was relevant to show Underwood's "knowledge that his actions were wrong." "But, 'knowledge' under Rule 404 (b) refers to a special skill like safecracking, bomb-making, or document forgery or to specific knowledge based on past experience," (citation and punctuation omitted) *Pritchett v. State*, 314 Ga. 767, 777 (2) (b) (879 SE2d 436) (2022), and the incident between Underwood and Brittany attributed no specialized knowledge to Underwood as to how to control other people through violence. Thus, the trial court erred in admitting the other-acts evidence on this basis.

(iii) *Motive and Intent.* The State argues that the other-acts evidence was relevant to show Underwood's "motive to control the actions of others" and "intent to physically control people." "Such an argument, however, is merely an impermissible one seeking to demonstrate that [Underwood's] bad character gave him the propensity to commit the crimes charged." *Fincher v. State*, 363 Ga. App. 439, 445 (2) n.3 (870 SE2d 833) (2022) (other-acts evidence that defendant's acquaintance was

burnt with lit cigarettes while unconscious from drugs was inadmissible to prove motive and intent to use drugs and violence to manipulate, control, and detain women), disapproved of on other grounds by *Oliver v. State*, 364 Ga. App. 828, 837 (1) (a) (iii) n.2 (876 SE2d 34) (2022). Accordingly, the trial court abused its discretion by admitting the other-acts evidence on these grounds. See *Harris v. State*, ___ Ga. ___ (2) (a) (i) (Case No. S24A0910, decided March 4, 2025) (rejecting State's "motive to control" intimate partners with violence arguments as an impermissible basis for admitting evidence of defendant's past battery); *Pritchett*, 314 Ga. at 778 (2) (b) (admission of evidence to support that defendant "committed violent actions against those with whom he had a relationship to control them . . . goes to propensity and is not a proper purpose").

(iv) *Absence of Accident or Mistake*. The State argues that the other-acts evidence was relevant to show "the lack of mistake regarding what was taking place." But Underwood "never claimed, nor was there any evidence to suggest, that the [violence] was the result of an accident or mistake; thus, whether his actions were the result of an accident or mistake was irrelevant." (Citation omitted.) *Brown v. State*, 303 Ga. 158, 161-162 (2) (810 SE2d 145) (2018). The trial court therefore abused its discretion

by admitting the other-acts evidence on this ground. See *Parks v. State*, 300 Ga. 303, 306 (2) (794 SE2d 623) (2016) (other-acts evidence not relevant "to show appellant's knowledge or absence of mistake or accident as to the crimes charged" because "his knowledge was not at issue where the defense was justification, and he made no claim that he accidentally or mistakenly shot the victim" (emphasis omitted)).

Accordingly, we conclude that the State failed to show a relevant purpose for the other-acts evidence; the trial court therefore abused its discretion by admitting that evidence under Rule 404 (b).

(b) *Harm*. Having concluded that it was an abuse of discretion to admit the evidence of Underwood's battery of his daughter, we must consider whether that error requires reversal of his convictions. "The trial court's evidentiary error requires reversal of Appellant's convictions unless it can be deemed harmless, meaning that it is highly probable that the error did not contribute to the verdict." (Citation and punctuation omitted.) *Heard*, 309 Ga. at 90 (3) (g). See also OCGA § 24-1-103 (a) ("Error shall not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). "In determining whether trial court error was harmless, we review the record de novo, and we weigh the evidence

10

as we would expect reasonable jurors to have done so as opposed to viewing it all in the light most favorable to the jury's verdict." (Citation and punctuation omitted.) *Heard*, 309 Ga. at 90 (3) (g). "When the error is admitting evidence that should not have been admitted, the harmless-error question turns on how much the wrongly admitted evidence likely mattered to the jury's decision to convict." *Harris*, ___ Ga. at ___ (2) (b).

Here, the evidence presented at trial was not overwhelming. See *State v. Enich*, 337 Ga. App. 724, 729 (2) (788 SE2d 803) (2016) (evidence against defendant was not overwhelming where, among other things, victim recanted her accusation and gave inconsistent statements about the incident, and trial court error was therefore not harmless). Israel provided multiple versions of what happened between her and Underwood, and at trial, she denied that Underwood had committed any violent acts against her. Brittany similarly downplayed the incident between Israel and Underwood, claiming that Underwood was trying to help her get Israel out of the car and that he did not intend to harm her son. With regard to the fight between Tyler and Underwood, Brittany testified that Tyler instigated the altercation and denied seeing Underwood choke Tyler.

Moreover, the content of the other-acts evidence, which the State introduced to show a pattern of using violence to control others, is itself inflammatory. See *Harris*, ___ Ga. at ___ (2) (b) ("It is one thing for a jury to not believe a defendant because his story is not believable; it is quite another for a jury to not believe a defendant because he has already been shown to be a bad person who does bad things.") (footnote omitted). Although Brittany testified that she reported the argument between her and Underwood to law enforcement, there was no evidence presented to the jury that Underwood would actually be tried for and convicted for any crime as a result of that interaction. See *Jackson v. State*, 306 Ga. 69, 79-80 (2) (b) (ii) (829 SE2d 142) (2019) (explaining that the lack of evidence that the appellant had been prosecuted, admitted his guilt, and served a sentence for his other criminal act "increased the risk that the jury would want to punish Appellant for his past conduct rather than only for the charged crimes"). Finally, the trial court did not provide a limiting instruction explaining for which permissible purposes the jury could consider the other-acts evidence. Compare *Nundra v. State*, 316 Ga. 1, 8 (2) (885 SE2d 790) (2023) ("although the trial court's limiting instructions did not meaningfully explain for which permissible purpose the evidence was relevant, they did, at least, tell the

12

jury what it could *not* do") (emphasis in original). Because there were no instructions given to the jury to explain the permissible purposes for which the evidence could be considered,[5] there is a higher likelihood that the other-acts evidence influenced the verdict. Compare *Redding v. State*, 320 Ga. 107, 118-119 (3) (b) (907 SE2d 258) (2024) (any harm in admitting other-acts evidence was mitigated by, among other things, limiting instructions provided to the jury regarding the other-acts evidence, both after the other-acts evidence was introduced and again in the court's jury charge).

Thus, we cannot say that it is highly probable that the trial court's error in admitting the evidence of Appellant's later crimes under Rule 404 (b) did not contribute to the jury's guilty verdicts on the charged crimes. We therefore reverse the trial court's denial of Underwood's motion for new trial on this ground. Because all of the evidence, viewed in the light most favorable to the verdict, was sufficient to support Underwood's convictions, he may be retried by the State if it chooses to do so. See *State v. Lane*, 308 Ga. 10, 23 n.13 (838 SE2d 808) (2020).

---

[5] While a trial court is not required to give a limiting instruction without a request from the defendant, see *State v. Belt,* 269 Ga. 763, 764-765 (505 SE2d 1) (1998), our Supreme Court has explained that "it is the better practice" to charge the jury on "the specific limited purpose" for which other-acts evidence may be considered. *Sedlak v. State*, 275 Ga. 746, 751 (2) (e) (571 SE2d 721) (2002).

2. Because we have found that Underwood is entitled to a new trial, we need not reach his remaining enumerations of error.

*Judgment reversed. Mercier, C. J., and Dillard, P. J., concur.*